1   Paul H. Duvall (SBN 73699)
    E-Mail: pduvall@kingballow.com
2   **KING & BALLOW**
    6540 Lusk Blvd., Suite 250
3   San Diego, CA 92121
    (858) 597-6000  Facsimile: (858) 597-6008
4
5   Mark L. Block (SBN 115457)
    E-Mail: mblock@wargofrench.com
6   **WARGO & FRENCH LLP**
    1888 Century Park East
    Suite 1520
7   Los Angeles, CA 90067
    (310) 853-6355  Facsimile: (310) 853-6333
8
9   Attorneys for Defendant Shep Pettibone
    and Lexor Music, Inc.

10          **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

12

13   VMG SALSOUL, LLC, a Delaware limited
     liability company,
14
                    Plaintiff,                          Case No. CV 12-05967 BRO(CWx)
15
              vs.                                       **MEMORANDUM OF POINTS
16                                                      AND AUTHORITIES IN
                                                        SUPPORT OF DEFENDANTS
17   MADONNA LOUISE CICCONE,                            SHEP PETTIBONE AND LEXOR
     professionally known as MADONNA, an                MUSIC, INC.'S MOTION FOR
18   individual; SHEP PETTIBONE, an individual;         SUMMARY JUDGMENT
     WB MUSIC CORPORATION, a Delaware
19   corporation; BLUE DISQUE MUSIC                     **Date: June 3, 2013
     COMPANY, INC., a corporation; WEBO                 Time: 1:30 p.m.
20   GIRL PUBLISHING, INC.,  a California               Judge: Beverly Reid O'Connell
     corporation; LEXOR MUSIC, INC., a New              Courtroom: 6-2nd Floor**
21   York corporation; and DOES 1 through 10,
     inclusive,                                         **Final Pretrial Conference: June 10,
22                                                      2013
                    Defendants.                         Jury Trial: June 18, 2013**
23
24
25
26
27
28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.   TABLE OF AUTHORITIES ............................................................. iii

II.  INTRODUCTION ................................................................................ 1

      A. The Parties .................................................................................. 1

      B. Request for Summary Judgment ............................................... 3

III. STATEMENT OF FACTS ................................................................. 3

IV. APPLICABLE LEGAL STANDARD ............................................... 9

V.  ARGUMENT .................................................................................... 10

    A. Plaintiff Lacks Standing to Bring Suit for Infringement of "Love Break" ........... 10

    B. Pettibone Cannot be Sued for Infringement of the "Love Break" Sound Recording Because he is a Co-Author ................................. 11

       (1) It is undisputed that Pettibone created the "Love Break" sound recording 11

       (2) There exists no work-for-hire agreement concerning "Love Break" ....... 12

       (3) Pettibone is also a co-owner of the "Love Break" musical composition . 14

    C. Plaintiff Brings this Action for Copyright Infringement with Unclean Hands 14

    D. Plaintiff's Claims Regarding the "Vogue (Shep's On the Fly)" and "Vogue (The Shep Pettibone Integral Mix)" Remixes Should be Dismissed ............................. 16

    E. The Alleged Copied Horn Hit or Stab In "Vogue" and the Alleged Copied Vocals, Congas, and Percussion in the "Vogue" 12-inch Remixes Are Not Subject to Copyright Protection ....................................... 17

       (1) The horn hit or stab in "Vogue" is not subject to copyright protection 17

       (2) The congas and percussion in the "Vogue" 12-inch Remixes are also not subject to copyright protection ............................. 19

    F. Plaintiff Concedes the Alleged Copying, Which Pettibone Denies, Cannot be Heard by the Ordinary Observer, Meaning the Two Works are Not Substantially Similar ............................................. 19

    G. Plaintiff's Infringement Claims Also Must be Dismissed as *De Minimis* ........... 21

    H. In the Alternative, Plaintiff's Copyright Infringement Claim Should be Limited to the Statutory Three Year Period ................................. 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION SUMMARY JUDGMENT

1
VI.  CONCLUSION ........................................................................................25
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ahanchian v. Xenon Pictures, Inc.*,
    403 Fed.Appx. 166 (9th Cir. 2010)............................................................11

*Baker Hughes, Inc. v. Davis–Lynch, Inc.*,
2000 WL 33993301, at *9 (S.D.Tex.2000) ................................................25

*Baughman v. Walt Disney World Co.*,
    685 F.3d 1131, 1133 (9th Cir. 2012) .......................................................20

*Benjamin v. Walt Disney Co.*,
    CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007)................24

*Bistro Executive, Inc. v. Rewards Network, Inc.*,
    CV 04-4640 CBM MCX, 2006 WL 6849825 , at *5 (C.D. Cal. July 19, 2006) .......20

*Bradbury v. Columbia Broad. Sys., Inc.*,
    287 F.2d 478, 485 (9th Cir. 1961) ...........................................................21

*BTE v. Bonnecaze*,
    43 F. Supp. 2d 619 (E.D. La. 1999).............................................................5

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ...................................................................22

*Community for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)...................................................................................13

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 348–51, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ........17

*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1986) .............................................................20, 22

*Fuddruckers, Inc., v. Doc't B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir.1987) .....................................................................14

*Gaste v. Kaiserman,*
  863 F.2d 1061 (2d Cir.1988) ...................................................................... 17

*Identity Arts v. Best Buy Enter. Servs. Inc.,*
  C 05-4656 PJH, 2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) ................................ 10

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,*
  139 F.3d 1234, 1239 (9th Cir. 1998) ....................................................... 20

*Jou v. Accurate Research,*
  73 Fed.Appx. 964 (9th Cir. 2003)........................................................ 13, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..................................... 10

*McDonald v. Multimedia Entertainment, Inc.,*
  No. 90 Civ. 6356(KC), 1991 WL 311921 (S.D.N.Y. July 19, 1991)................... 18, 19

*McIntosh v. N. California Universal Enterprises Co.,*
  670 F. Supp. 2d 1069, 1087 (E.D. Cal. 2009) ............................................. 21

*Murray Hill Publications, Inc. v. ABC Commc'ns, Inc.,*
  264 F.3d 622 (6th Cir. 2001) .................................................................... 11

*Newton v. Diamond,*
  204 F. Supp. 2d 1244 (C.D. Cal. 2002) .......................................... 10, 17-18

*Newton v. Diamond,*
  388 F.3d 1189 (9th Cir. 2004) .................................................................. 20-23

*O'Brien v. City of Tacoma,*
  C04-5458FDB, 2005 WL 2045882, at *2 (W.D. Wash. Aug. 24, 2005)................... 20

*Oddo v. Ries,*
  743 F.2d 630 (9th Cir. 1984) ................................................................ 11, 12

*Pamlioff v. Giant Records, Inc.,*
  1992 Copr. L. Dec. P 26865, 1991 WL 334916 (N.D. Cal. Oct. 28, 1991)............. 10

*Poindexter v. EMI Record Grp. Inc.,*
  11 CIV. 559 LTS JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012)............... 18, 19

*Polar Bear Productions, Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................................ 24

*Pringle v. Adams*,
  SACV 10-1656-JST RZX, 2012 WL 1103939 (C.D. Cal. Mar. 30, 2012)............... 10

*Republic Molding Corp. v. B.W. Photo Utilities*,
  319 F.2d 347 (9th Cir.1963) ................................................................. 15

*Richmond v. Weiner*,
  353 F.2d 41 (9th Cir. 1965) .................................................................. 11

*Ringgold v. Black Entm't TV*,
  126 F.3d 70 (2d Cir. 1997) ................................................................... 21

*Roderick v. Mazzetti & Associates, Inc.*,
  C 04-2436 MHP, 2006 WL 1883328, at *5 (N.D. Cal. July 7, 2006)....................... 20

*Rogers v. Koons,*
  960 F.2d 301 (2d Cir.1992) ................................................................. 17

*Roley v. New World Pictures, Ltd.*,
  19 F.3d 479 (9th Cir. 1994) .................................................................. 25

*Supermarket of Homes v. San Fernando Valley Bd.*,
  786 F.2d 1400 (9th Cir.1986) ............................................................... 14-15

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................ 18

*Tempo Music, Inc. v. Myers,*
  407 F.2d 503 (4th Cir.1969) ............................................................... 15, 16

*TWA v. American Coupon Exchange,*
  913 F.2d 676 (9th Cir.1990) ................................................................ 14

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*,
  555 F.3d 772, 779-80 (9th Cir. 2009)....................................................... 20

*West Publ'g Co. v. Edward Thompson Co.*,

169 F. 833 (E.D.N.Y. 1909) ..................................................................21

*Williams v. Kaag Mfrs., Inc.*,
   338 F.2d 949 (9th Cir. 1964) ...........................................................20

*Worth v. Selchow & Righter Co.*,
   827 F.2d 569, 570 n. 1 (9th Cir.1987) .............................................22

*Yanez v. United States*,
   989 F.2d 323, 326 (9th Cir. 1993) ...................................................20

**FEDERAL RULES**

Fed. R. Civ. P. 56 ...................................................................... *infra*

**STATUTES**

17 U.S.C. § 101 ...............................................................................11- 13

17 U.S.C. § 102 ................................................................................ 12

17 U.S.C. § 201(a) ......................................................................12, 14

17 U.S.C. § 201(b) ........................................................................... 12

17 U.S.C. § 411(a) ........................................................................... 10

**TREATISES**

1 Nimmer on Copyright § 5.01[B].......................................................25

4 Nimmer on Copyright § 13.01[B] ...................................................20

4 Nimmer on Copyright § 13.03[A] ...................................................20

4 Nimmer on Copyright § 13.03[E] ...................................................20

## I.    INTRODUCTION

In its Complaint, Plaintiff claims that Madonna's 1989 world famous recording "Vogue" (co-written by Defendants Shep Pettibone and Madonna) contains a millisecond-long, single chord horn sound, i.e., a "hit" or "stab," from an obscure recording titled, "Ooh, I Love It (Love Break)" (hereinafter referred to as "Love Break"), which Plaintiff just recently purportedly acquired, and which Pettibone himself indisputably created. Plaintiff alleges in its Complaint that the purported copying was "hidden" and "disguised" and could not be detected without electronic equipment supposedly invented in 2011 (alleged in a transparent attempt to avoid the statute of limitations, but, thereby, fatally conceding that any such alleged copying is *de minimis* and not actionable).

According to Plaintiff, the Defendants are liable for copyright infringement either for their role, some 23 years earlier, in the creation of "Vogue," or for their exploitation of "Vogue" thereafter.   Although Plaintiff's allegations are false, and fail for the numerous reasons discussed below, one fact is particularly unseemly and grounds for dismissal alone: Plaintiff's founder and CEO, and its Senior Vice President, are former colleagues of defendant Pettibone and worked with him on some or all of the very recordings of "Vogue" they now allege to be infringing.   Accordingly, Plaintiff's plan to purchase Love Break, in order to then turn around and sue Pettibone for copyright infringement fails due to Plaintiff's own very unclean hands.

**<u>The Parties</u>**

Plaintiff, VMG Salsoul, LLC ("VMG" or "Plaintiff") is a limited liability company that owns the record catalog of Salsoul Records ("Salsoul"), and claims to be the owner of the "Love Break" sound recording at issue in this case.   Plaintiff is owned by Verse Music Group ("Verse"), which was founded in part by Curt Frasca ("Frasca"), Plaintiff's Chief Executive Officer.   Verse acquired Salsoul in July of 2010.   Prior to being acquired by Verse, Salsoul had investigated whether a sample of "Love Break" was contained in "Vogue" and ultimately concluded that it was either not used at all, or

that any alleged use was so insignificant that it was not worth pursuing.  *See* Defendant's Statement of Uncontroverted Facts ("SOF") ¶¶ 83-86.

Frasca is a musical engineer by training, and worked with Pettibone for many years.  Frasca is credited as the Assistant Engineer on a 1990 12 inch, post production record containing three remixes of "Vogue" alleged now to contain samples from "Love Break," meaning that, as described fully below, if "Vogue" infringes "Love Break," which as discussed below it does not, Frasca is a co-infringer, has unclean hands, and Plaintiff cannot pursue this action.

Tony Shimkin ("Shimkin"), who has known Frasca for more than twenty years, was hired by Frasca as Senior Vice President of Production at Verse just before the filing of this action.  SOF ¶  88.  Shimkin was Pettibone's personal assistant for many years, and is also credited as an editor on the 12 inch remixes of "Vogue," meaning that he too is liable as a co-infringer if "Love Break" is contained in "Vogue."  Shimkin has given interviews in which he has expressed anger and resentment toward Pettibone for supposedly not allowing him to have writer credit on certain other songs he claims to have worked on with Pettibone.

Defendant Pettibone is an award winning record producer and composer.  He is also formerly a well-known New York City radio personality who created and produced the sound recording of "Love Break" in 1982.  Pettibone is credited with writing the music of the "Vogue" musical composition and producing the sound recording embodying Madonna's performance of "Vogue."  Pettibone co-created and produced many other successful recordings by Madonna and others.  "Vogue" was commercially released in 1990 by Warner Brothers Records.

The remaining defendants are Madonna, WB Music Corporation (which owns and administers musical compositions and not sound recordings), Blue Disque Music Company, Inc. (currently non-existent), WEBO Girl Publishing, Inc., (Madonna's music publishing company), and Lexor Music, Inc. (Pettibone's music publishing company).

**Request for Summary Judgment**

Defendant Pettibone and his publishing company Lexor Music, Inc., respectfully submit this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  As discussed in detail below, and in the attached Statement of Undisputed Facts, this copyright infringement case should be dismissed in its entirety for multiple reasons:  (1) VMG does not have standing to bring this suit because it does not possess a copyright registration for the allegedly infringed "Love Break" sound recording;  (2) Pettibone is at minimum a co-author of "Love Break," who cannot be sued for infringement thereof; (3) Frasca, Plaintiff's founder and CEO, worked on "Vogue," and he and Shimkin worked on the 12 inch remixes now alleged to be infringing works, meaning, therefore, to the extent there is any infringement, they are co-infringers who have unclean hands; (4) the alleged copied portions of "Love Break" are not subject to copyright protection as they lack originality and, therefore, are not copyrightable; and (5) any such copying, which Pettibone denies, is nevertheless *de minimis*.  In the alternative, Pettibone moves to limit Plaintiff's recoverable damages for infringement to the statutory three-year period because there is no excuse for any failure to discover the alleged infringement contained in "Vogue," and Plaintiff's predecessor, Salsoul, investigated the alleged infringement several years prior to Verse's acquisition of "Love Break", but decided not to pursue any sampling claim for the reasons discussed below.

**STATEMENT OF FACTS**

**The "Philly Sound"**

In the early 1970s, a musical group by the name of Mother, Father, Sister, Brother ("MFSB") created various hit songs containing simple chords of horns and other harmonics, which were commonly referred to as the "Philadelphia or 'Philly' Sound." SOF ¶ 1. These horns and instruments comprising the Philly Sound were present in many other songs by various artists, including The O'Jays, Eddie Kendricks, The Spinners, and Teddy Pendergrass.  SOF ¶ 2.  One MFSB song in particular, "Love is the

Message," was an instrumental song that embodied these simple horn chords and Philly Sounds.  SOF ¶ 3.  MFSB also recorded many other songs in the 1970s that contained these same horns and Philly Sounds, including "T.S.O.P.," "Ferry Avenue," "Get Down With the Philly Sound," and "Plenty Good Lovin'."  SOF ¶ 4.  MFSB eventually became the house-band for the New York City-based record label, Salsoul, and was called the Salsoul Orchestra.  SOF ¶ 9.  When questioned about the horn sound in "Vogue" at his deposition, Shimkin himself identified it as being the same horn sound as in "Love Is The Message" – not "Love Break."  SOF ¶ 7.

**Creation of "Ooh, I Love It (Love Break)"**

In or around 1975, Vincent Montana, Jr. ("Montana") wrote a song for Salsoul entitled, "Chicago Bus Stop (Ooh, I Love It)" (referred to hereafter as "Chicago Bus Stop").  SOF ¶ 10.  "Chicago Bus Stop" was recorded by the Salsoul Orchestra, and incorporated material from the group's prior work, "Love is the Message."  SOF ¶ 11. In or around 1982, Pettibone was asked by Salsoul's owner, Ken Cayre, to use "Chicago Bus Stop" as inspiration to create a new composition and recording.  SOF ¶ 12.  In order to create what became "Love Break," the bass player and the drummer from "Love is the Message," who were members of the Salsoul Orchestra in 1982, performed and recorded bass and drums parts for use in "Love Break."  SOF ¶ 14.  The recording contained essentially the same horn, string, bass, and drum parts from the group's earlier work on "Love is the Message."  SOF ¶ 15.  Pettibone also composed original material and included a Rhodes, an organ, all of the percussion to the song, and a tape recording he made of himself and others singing the lyrics "Love Break."  SOF ¶ 16.  The new musical work that Pettibone created became known as the song and the recording, "Ooh, I Love It (Love Break)" a/k/a "Love Break."  SOF ¶ 17.  While "Love Break" was released in 1983, the instrumental version of "Love Break" (alleged to have been sampled in "Vogue") was not released until 1992, *more than three years after* the

release of "Vogue." SOF ¶ 18. Nonetheless, it is this instrumental version of "Love Break" that Frasca and his expert contend was sampled into "Vogue." *Id.*

"Love Break" differs substantially from "Chicago Bus Stop." SOF ¶ 19. In fact, "Love Break" is much closer compositionally to "Love is the Message," with the "Love is the Message" bass player and drummer playing the rhythm used throughout "Love Break," and with the string alterations also heard throughout most of "Love Break." SOF ¶ 20. These musical components structure the harmonic content of "Love Break," create the rhythm section, and establish the mood with the alternating string sounds and their imitation on voice and vibes. SOF ¶ 21. This rhythm section is used as the base for a new rap composition by Pettibone, accompanied by additional percussion, organ, and Rhodes. SOF ¶ 22. The only two sections of thematic material from "Chicago Bus Stop" occupy a minor part of the total duration of the recording, two minutes and fifteen seconds of a seven-minute and twenty-five second piece. SOF ¶ 23.

While Pettibone was credited only with "remixing" and "additional production" on the "Love Break" sound recording, by operation of copyright law Pettibone was an author (or co-author) and creator of "Love Break." SOF ¶¶ 36, 13-14, 16.[1] Because there is no written agreement providing that "Love Break" was created by Pettibone as a work-for-hire, or assigning Pettibone's copyright interest to Salsoul, as a matter of law Pettibone owns (or at least co-owns) the copyright in the "Love Break" recording. SOF ¶ 35. Salsoul never applied for a copyright registration for the musical composition or sound recording of "Love Break," and none exists. SOF ¶ 40.

**Creation of "Vogue"**

---

[1] "Sound recordings and the underlying musical compositions are separate works with their own copyrights. … The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition." *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 627-28 (E.D. La. 1999) (internal citations omitted).

In or around 1989, Craig Kostich, the head of dance music at major record label Warner Brothers Records, asked Pettibone to create a song for Madonna.  SOF ¶ 43.  This song became "Vogue," for which Pettibone created the music. SOF ¶ 44.  The initial recording of "Vogue" was done by Pettibone and programmer, Alan Friedman ("Friedman"), at Friedman's residence.  SOF ¶ 45.  Friedman also worked directly with Pettibone at the Overdubbing sessions for "Vogue."  SOF ¶ 46.  Friedman's job as the programmer of "Vogue" was to run a sequencer, which is a computer program that is designed to trigger events out of various keyboards. SOF ¶ 47.

"Vogue" was commercially released on Madonna's "I'm Breathless" album, and later as a single in 1990.  SOF ¶ 49.  The only allegation of copying in this case with respect to the single and album version of "Vogue" is that it supposedly contains a single-chord horn stab from "Love Break."  SOF ¶ 50.  It does not.  Pettibone created the horn sound using a device called a "proteus emulator," which has pre-recorded, factory installed, live sounds on it. SOF ¶ 51.[2]

## Creation of the "Vogue" 12 Inch Post Production Remixes

Pettibone, Frasca and Shimkin are credited as working together on three "Vogue" club remixes created after the initial "Vogue" recording.  SOF ¶ 56.  These remixes were released in 1990 on a separate 12 inch vinyl record and were titled "Vogue (12'' Version)," "Vogue (Bette Davis Dub)," and "Vogue (Strike-a-Pose Dub)" (referred to hereafter as the "12-inch Remixes").  SOF ¶ 55.  At this time, Shimkin was working at Soundworks, the studio where "Vogue" was mixed, and served as Pettibone's editor and assistant engineer.  SOF ¶ 57.  Shimkin was credited on the 12-inch Remixes as the Editor.  SOF ¶ 58.  Frasca worked alongside Shimkin and Pettibone as an assistant engineer on the 12-inch Remixes, and is credited as Assistant Engineer.  SOF ¶ 66.

---

[2] While Shimkin has testified in deposition that Pettibone told Friedman to sample the "Love Break" horn stabs for use in "Vogue," Friedman, who was with Pettibone during the entire recording process, and specifically for the recording of the horn sound in "Vogue," testified that he was never asked to sample "Love Break," and has no knowledge of it or any other song being copied into Vogue.  SOF ¶ 52.

Frasca testified in deposition that he believed, as early as 1990 when he was working on the 12-inch Remixes, that "Vogue" and the 12-inch Remixes contained a sample of the horns from the "Love Break" sound recording.  SOF ¶ 70.  With respect to the 12-inch Remixes, Frasca testified that he believes that each contains samples from the "Love Break" sound recording beyond the horn "stab," including congas, percussion, and vocals.  SOF ¶ 73.  While Frasca claims he has no personal knowledge that the remixes in fact contain samples, and of course denies that he added any samples himself, he now claims that they do, and points to vocals in those remixes (on which he worked as the engineer), that say "Love Break."  SOF ¶ 74.

Frasca further testified that there are two more remixes of "Vogue" that allegedly contain samples from "Love Break."  SOF ¶ 77.  Yet, there is no evidence in this record that these two remixes titled, "Vogue (Shep's On The Fly)" and "Vogue (The Shep Pettibone Integral Mix)" were created or authorized by any of the Defendants.  SOF ¶ 78.  Moreover, there is no evidence in this record of these two remixes ever having been played on the radio or commercially released. SOF ¶ 79.

Pettibone, Shimkin, and Frasca were more than just co-workers: Shimkin lived with Pettibone rent free in New York City for almost five years and engaged in a romantic relationship with Pettibone that Pettibone ultimately ended; Frasca and Shimkin worked for Pettibone for many years and the three of them vacationed together in the Caribbean and enjoyed frequent getaways to Pettibone's home in the Poconos; and both Shimkin and Frasca credit Pettibone for helping them establish their music production careers.  SOF ¶ 76.  Now, however, they have the unmitigated gall to team up to sue Pettibone, alleging that he committed copyright infringement of: (i) a recording he created; (ii) in a recording, "Vogue," that Shimkin and Frasca are credited themselves with creating.  It is not a coincidence that Frasca hired Shimkin as Vice-President of Music Production at Verse in August, 2011, just eleven months before the filing of this Complaint.  SOF ¶ 88.

**Salsoul Investigates "Vogue's" Possible Sampling of "Love Break"**

Several years prior to Verse's acquisition of Salsoul, Salsoul discovered that "Vogue" might contain a sample of the "Love Break" sound recording.  SOF ¶ 83. Salsoul investigated the matter, even bringing in the drummer on "Love Break" to listen to "Vogue" and determine whether it contained samples from "Love Break."  SOF ¶ 84. The drummer did not believe that there were samples from "Love Break" in "Vogue," and further was unable to identify any portion of "Love Break" in "Vogue" at all. SOF ¶ 85.  Salsoul decided not to pursue any claim because it determined that there was no use of "Love Break" in "Vogue," or, if there were any at all, it was minimal and insufficient to support an infringement claim.  SOF ¶ 86.

Prior to finalizing the sale of Salsoul to Verse in 2010, Frasca asked Salsoul executive, Glen Larusso, why Salsoul had not pursued any claim of infringement regarding the supposed use of a sample of "Love Break" in "Vogue."  SOF ¶ 89. Larusso responded that Salsoul was aware of the potential claim, but chose not to pursue it because any supposed use was minimal.  SOF ¶ 90.  Larusso further told Frasca that "Vogue" was twenty years old, so the statute of limitations would make any claim not worth pursuing.  SOF ¶ 91.  Frasca does not deny this conversation with Larusso took place.  SOF ¶ 92.  Verse was nonetheless particularly interested in acquiring the Salsoul Records catalog because it believed that there were potential sampling claims which might generate money for Verse, including "Love Break," due to what Frasca claims he perceived while working on "Vogue," in 1990.  SOF ¶ 93.

**Plaintiff's Complaint for Copyright Infringement of "Love Break"**

Plaintiff's Complaint, brought *twenty-two years* after the release of the supposedly infringing "Vogue," alleges that portions of "Vogue" are intentionally sampled from the "Love Break" sound recording throughout, yet the expert report attached to the Complaint only references a single chord horn sound. SOF ¶ 94. Plaintiff further alleges that the purportedly copied portions of the "Love Break" sound recording

were "deliberately hidden," and "disguised," could not be heard by an ordinary observer,  and were only detected when "[Plaintiff] specifically looked for the sample, with the technology first available to it in 2011."  SOF ¶ 96.  Based upon Frasca's own admissions in deposition, this allegation about "new technology" was knowingly false, and Plaintiff also now denies other material facts pleaded by it to be true.  SOF ¶97.

Furthermore, while Plaintiff claims to own the copyright registrations for "Love Break" through its acquisition of Salsoul, the registration Plaintiff attaches to its Complaint is for the work, "Chicago Bus Stop (Ooh, I Love It)," which was written by Montana and recorded by the Salsoul Orchestra in 1975.  SOF ¶ 102.  The words, "Love Break," are not found on the registration, contrary to the false assertion in Plaintiff's Complaint.  SOF ¶ 103.  Notably, the attached copyright registration is dated May 1976, yet "Love Break" was not created by Pettibone until 1982.  SOF ¶ 104.  Plaintiff also attaches not a registration, but an irrelevant November 1975 Application for a sound recording titled "The Sasloul [sic] Orchestra."  SOF ¶  104.

It was only revealed through recent discovery and during Frasca's deposition that Plaintiff's confusing Complaint is alleging copyright infringement of the "Love Break" sound recording, and not the "Chicago Bus Stop (Ooh, I Love It)" sound recording.[3] SOF ¶ 105.  Therefore, as conceded by Frasca, Plaintiff alleges copyright infringement of a sound recording for which it has no copyright registration.  SOF ¶ 107.

## II.    APPLICABLE LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (b), (c); *see Newton v. Diamond*, 204 F. Supp. 2d 1244, 1247 (C.D. Cal. 2002). The purpose of summary judgment is "to

---

[3] Plaintiff makes no claim regarding the "Love Break" musical composition and therefore, only the sound recording is at issue in this action.  SOF ¶ 106.

pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56 Adv. Comm. Note).

## III.   ARGUMENT

### A. Plaintiff Lacks Standing to Bring Suit for Infringement of "Love Break"

Plaintiff's Complaint asserts a claim for the infringement of the "Love Break" sound recording.   Plaintiff, however, owns no copyright registration for this sound recording, or for the underlying "Love Break" musical composition, and the action must be dismissed for this reason alone.[4]   Registration of a work is a prerequisite to a suit for copyright infringement and must be pleaded.   *See* 17 U.S.C. § 411(a); *Pamlioff v. Giant Records, Inc.*, 1992 Copr. L. Dec. P 26865, 1991 WL 334916 (N.D. Cal. Oct. 28, 1991). *See also Pringle v. Adams*, SACV 10-1656-JST RZX, 2012 WL 1103939 (C.D. Cal. Mar. 30, 2012) (granting defendants' motion for summary judgment for among other reasons, the fact that plaintiff lacked standing to sue for infringement because it did not have a valid registration to the subject work); *Identity Arts v. Best Buy Enter. Servs. Inc.*, C 05-4656 PJH, 2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) (finding plaintiff lacked standing to sue for infringement when, at the time, plaintiff had not yet filed an application for registration of the work).

Plaintiff attached to the Complaint only the copyright registration to the musical composition "Chicago Bus Stop" and an application for copyright for a sound recording titled "The Sasloul [sic] Orchestra"   SOF ¶¶ 102, 104.   Neither "Chicago Bus Stop" or "Sasloul Orchestra" is the recording that is alleged to be infringed in this action. SOF ¶¶ 94, 105.   Instead, Plaintiff claims that the sound recording "Love Break" (and more specifically, an instrumental version of Love Break not released until 1992, two years following the release of "Vogue"), was infringed.   SOF ¶¶ 18, 94. Because Plaintiff

---

[4] Pettibone raised lack of standing as his sixteenth affirmative defense. *See* Plt. Answer (Dkt. No. 30).

does not have a copyright registration for either the sound recording or musical composition "Love Break," however, Plaintiff lacks standing to bring this action and it must be dismissed.[5]

## B. Pettibone Cannot Be Sued for Infringement of the "Love Break" Sound Recording Because He Is a Co-Author

A co-author of a joint work cannot be liable to another co-author for infringement of the copyright. *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984). A joint work is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The question of whether a defendant is a co-author of the copyright in question should be decided first because, should it be determined that the defendant is a co-author, the infringement action may be ended without further analysis since a copyright owner cannot infringe against its own copyright. *See Richmond v. Weiner*, 353 F.2d 41 (9th Cir. 1965). Furthermore, the question of co-authorship is proper for summary judgment where undisputed facts demonstrate that the defendant is a co-author. *See Ahanchian v. Xenon Pictures, Inc.*, 403 Fed. Appx. 166 (9th Cir. 2010).

### (1) It is undisputed that Pettibone created the "Love Break" sound recording

As a general rule, the author is the party who actually creates the work, or who translates an idea into a fixed, tangible expression entitled to copyright protection. 17 U.S.C. § 102. Here, it is undisputed that Pettibone was asked by Salsoul's owner, Ken Cayre, to create the sound recording for "Love Break." SOF ¶ 12. Pettibone took the original 1975 master recording of "Chicago Bus Stop" as inspiration and added multiple

---

[5]    To the extent Plaintiff claims "Love Break" is a derivative work of "Chicago Bus Stop," and thus does not need to register the work, that argument fails. *See Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 633 (6th Cir. 2001) (plaintiff barred from bringing action for copyright infringement of derivative song where plaintiff only formally registered the original song and failed to register the derivative song).

elements to it. SOF ¶¶ 14-17. The bass player and drummer from MFSB/Salsoul Orchestra performed and recorded different bass and drum parts. SOF ¶ 14. Pettibone enhanced the strings already existing in "Chicago Bus Stop," and composed original material with a Rhodes, organ, and all of the percussion. SOF ¶ 15-16. Lastly, Pettibone contributed a vocal performance, or "rap", made by Pettibone and other singers, with the lyrics of "Love Break" over the track. SOF ¶ 22. The "Love Break" sound recording is an entirely new work created by Pettibone. SOF ¶ 17. By operation of copyright law, Pettibone is an author of the "Love Break" sound recording because he is the creator. 17 U.S.C. § 201(a) ("copyright ownership vests initially in the author or authors of the work"). An action against him for infringement of any portion of the sound recording cannot, therefore, stand. *See Oddo*, 743 F.2d at 632-33.

### (2) There exists no work-for-hire agreement concerning "Love Break"

Salsoul would only be the owner of the "Love Break" sound recording if it entered into a written work-for-hire agreement with Pettibone. The Copyright Act permits works to be made "for hire" only in very narrow circumstances: (1) a work prepared by an *employee* within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties *expressly agree in a written instrument signed by them that the work shall be considered a work made for hire*. 17 U.S.C. § 101. If the work is for hire, the employer or other person for whom the work is prepared is considered the author and owns the copyright, unless there is a written agreement to the contrary. 17 U.S.C. § 201(b).

Sound recordings are not included as one of the enumerated categories under works specially commissioned qualifying as works for hire. 17 U.S.C. § 101. Even if they were, there was never a written agreement between Pettibone and Salsoul expressly

---

stating that the "Love Break" sound recording was a work for hire.[6] SOF ¶ 37. Accordingly, "Love Break" could only be a work for hire if Pettibone was an employee of Salsoul.  However, he was not an employee but an independent contractor, as described below.

In 2003, the Ninth Circuit held in *Jou v. Accurate Research* that the plaintiff could not establish the copyrights in question as works made for hire because the creators of the work were independent contractors, not employees.  73 Fed. Appx. 964 (9th Cir. 2003). In its analysis, the Ninth Circuit applied the factors dictated by the U.S. Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), and concluded that the creators of the work were not employees of the plaintiff because: they were highly-skilled; the plaintiff did not retain the right to control the manner or means by which the creators performed their work; the creators often worked on their own equipment even though the plaintiff provided equipment; the creators were hired for short periods of time and for discrete projects; and the plaintiff did not provide any employee benefits or withhold any taxes from the creators' pay.  *Id.* at 966.

Likewise, in the present case, Pettibone is a highly skilled producer who was asked by Salsoul to create a specific project – the "Love Break" sound recording.  SOF ¶ 12.  No oral or written agreement was entered into between Pettibone and Salsoul, and no terms of employment were ever discussed.  SOF ¶ 37.  Plaintiff has no evidence revealing otherwise.  Additionally, Pettibone only went to Salsoul's offices perhaps once a month, and, as the producer, was the creative force behind "Love Break."  SOF ¶¶ 13, 39.  Salsoul asked Pettibone to work on other projects prior to "Love Break," but had no right to assign additional projects to Pettibone -- Pettibone was simply asked each time whether he would like to complete a specific project.  SOF ¶ 41.  Lastly, Pettibone did no further work for Salsoul after his completion of the "Love Break"

---

[6]  Copyright in a work may be assigned through a written agreement if the work was not created as a work for hire; however, there was no written assignment from Pettibone to Salsoul, and Plaintiff has not alleged there was.

sound recording and has not spoken to owner Ken Cayre since.  SOF ¶ 42.  It is clear from these undisputed facts that Pettibone was an independent contractor of Salsoul Records, and therefore, the "Love Break" sound recording was not a work made for hire.  *Jou*, 73 Fed. Appx. at 964. Pettibone is, at least, therefore, a co-owner of the "Love Break" sound recording.  17 U.S.C. §201(a).

### (3) Pettibone is also a co-owner of the "Love Break" musical composition

For the foregoing reasons, Pettibone is also a co-owner of the "Love Break" musical composition because he created the composition, and there exists no work-for-hire agreement or assignment of copyright concerning the composition.  SOF ¶¶ 13-17, 37; *See* 17 U.S.C. § 201(a).  As stated above, Pettibone contributed significant additional elements in "Love Break" to what was in "Chicago Bus Stop" and wrote and performed the lyrics in the composition. SOF ¶¶ 13, 16, 22. Because copyright ownership vests in the author of the work, Pettibone is, at least, a co-owner of the "Love Break" composition.  17 U.S.C. § 201(a).

### C. Plaintiff Brings This Action with Unclean Hands

The defense of unclean hands applies in copyright infringement cases to prevent a plaintiff from obtaining relief both in law and in equity.  *Supermarket of Homes v. San Fernando Valley Bd.,* 786 F.2d 1400, 1408 (9th Cir. 1986).  Whether to apply the defense of unclean hands is within the court's sound discretion.  *TWA v. American Coupon Exchange,* 913 F.2d 676, 695 (9th Cir. 1990). The defense will apply to bar recovery where the plaintiff's wrongful act relates to the subject matter of the plaintiff's claims.  *Fuddruckers, Inc., v. Doc't B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir. 1987).  In applying the doctrine, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir. 1963).

In *Supermarket,* the court awarded summary judgment and damages to the defendants on their copyright counterclaim.  786 F.2d at 1410.  The plaintiff argued the defense of unclean hands prevented the defendants from recovering damages.  *Id.* at 1408.  The Ninth Circuit did not expressly state the equitable defense would apply in an action at law, but did address the defense and cited a Fourth Circuit case holding the defense of unclean hands applies in an action at law.  *Id.*  (citing *Tempo Music, Inc. v. Myers,* 407 F.2d 503, 507 & n. 8 (4th Cir.1969)).  In *Tempo,* the Fourth Circuit concluded it would be inequitable for the party to recover damages **when the party's action led, in part, to the infringement**.  *Tempo Music*, 407 F.2d at 507.  As demonstrated below, Plaintiff alleges copyright infringement with unclean hands because Plaintiff's founder and CEO, as well as one of its officers, contributed to the allegedly infringing works.

Plaintiff produced at Frasca's deposition, for the very first time, the 12-inch Remixes that, as discussed above, contain three additional recordings of "Vogue" that Plaintiff also claims infringe the "Love Break" sound recording.  SOF ¶ 55.  Plaintiff asserts the 12-inch Remixes sample a vocal line, congas, and percussion from "Love Break," in addition to the single chord horn stab.  SOF ¶ 73.  The problem for Plaintiff, as discussed above, is that its founder and CEO, along with its Senior Vice President, not only are credited as working on the 12-inch Remixes, but proudly admit doing so.  SOF ¶¶ 58, 66, 68, 72.  Indeed, Shimkin explained at his deposition, "I often took part in programming or the recording process, the mixing process." SOF ¶ 59. When asked whether it would be fair to say that Shimkin was *not* a writer or involved in the production or creation of "Vogue," Shimkin replied, "No."  SOF ¶ 60.  Instead, Shimkin went on to insist, "I was together with [Pettibone] in the writing of ["Vogue,"] so to speak, in the production of ["Vogue,"] the recording of ["Vogue,"] and directing of programmers and engineers." SOF ¶ 61. Shimkin further insisted that Pettibone "included [him] very much so in every respect of the process." SOF ¶ 62.

With respect to the 12-inch Remixes, Shimkin testified that he would "often **sample vocal** phrases from within the songs, "so when we created extended versions, I would then play these vocal samples in a rhythmic manner for certain portions of the extended remix, in the dub and in other versions." SOF ¶ 63. Shimkin would also "act as engineer in creating some of the elements of arrangements of the mix, so to speak, muting certain sections, adding delay; creative things that you would do in the process of mixing a record, and edit the final product." SOF ¶ 64. Shimkin specifically acknowledged the "Vogue (12" version)," and "Vogue (Bette Davis Dub)," and "maybe another dub," as remixes that he personally worked on. SOF ¶ 65.

Finally, as far as Frasca is concerned, he was an engineer on "Vogue," and credited as such on each of the 12-inch Remixes. SOF ¶¶ 66, 68, 72. He admitted working on any version of "Vogue" on which Pettibone worked, and is one of the people who is specifically credited on the jacket of the 12-inch Remixes as being the creators of those remixes. SOF ¶¶ 68-69, 72. Plaintiff brings this action for copyright infringement with unclean hands, and it must be dismissed. *See Tempo Music*, 407 F.2d at 507.

### D. Plaintiff's Claims Regarding the "Vogue (Shep's On the Fly)" and "Vogue (The Shep Pettibone Integral Mix)" Remixes Should be Dismissed

Through the recent testimony of Frasca, Plaintiff raised for the first time that two additional remixes of "Vogue" also allegedly infringe the "Love Break" sound recording: "Vogue (Shep's On the Fly)" and "Vogue (The Shep Pettibone Integral Mix)." SOF ¶ 77. However, Pettibone was not involved in the creation of these remixes and Plaintiff has no proof to the contrary. SOF ¶¶ 78, 80-81. In fact, Frasca admitted that it was possible none of the Defendants had anything to do with the creation of these remixes and that they were potentially created by unauthorized third parties. SOF ¶ 80. Frasca further admitted that he had no evidence regarding whether these remixes were ever played on the radio or otherwise exploited by any of the Defendants, or whether

they generated any income.  SOF ¶ 81.  There is no evidence in this record that these remixes were created by Pettibone, and no evidence that they have ever been exploited, sold, or otherwise distributed by any of the Defendants.  SOF ¶¶ 78-82.

### E. The Alleged Copied Horn Hit or Stab In "Vogue" and the Alleged Copied Vocals, Congas, and Percussion in the "Vogue" 12-inch Remixes Are Not Subject to Copyright Protection

### (1) The horn hit or stab in "Vogue" is not subject to copyright protection

The core claim at the heart of the Complaint is that a single chord horn sound from an obscure instrumental version of "Love Break," not released until two (2) years *after* the release of "Vogue," appears in "Vogue." SOF ¶ 18, 94.  The term "horn hit" or "horn stab" is often used to refer to this kind of short, percussive use of a chord, an effect commonly used in the Philly sound, in funk, in up-tempo soul, and in disco.  SOF ¶ 95.  The allegedly copied horn hits from "Love Break" are not subject to copyright protection because they are too trivial and are not sufficiently original.

"The protectability of elements of a copyrighted work is a question of law for the court." *Newton*, 204 F. Supp. 2d at 1253-54 (citing *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348–51, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)).  Not every element of a song is *per se* protected.  *Id.* (citing *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992)). "Copyright protection extends only to those components of the work that are original and non-trivial." *Id.* (citing *Feist*, 499 U.S. at 348–51).  "In assessing originality, courts must be 'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music.'" *Id.* (quoting *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir.1988)).

It is undisputed the alleged copied horn hits in "Vogue" consist of a single chord, or stab, and a chord, or stab, sounded twice.  SOF ¶¶ 26, 29, 50, 95.  Thus, as noted by the Court in its January 29, 2013 Order, "at its core, Plaintiff's allegation of copyright infringement centers on a *single* chord." Dkt. No. 29 at 5.  Notably, as further

acknowledged by the Court, "a single chord is 'too small a unit to attract copyright protection.'"  *Id.* (quoting *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004)).

In *Newton v. Diamond*, the court held even a "three-note sequence (C—D-flat—C) with one background note (C), segregated from the entire piece, cannot be protected, as it is not original as a matter of law."  204 F. Supp. 2d at 1253-54. Here,  the alleged copied portion of "Love Break" is even *less* than a three note sequence and consists of only a <u>single</u> chord or "hit."  SOF ¶¶ 25-26, 50.  Thus, the alleged copied horn "hit" is not original and too trivial to warrant copyright protection and, therefore, Plaintiff's copyright infringement claim fails <u>as a matter of law</u>.  *See also Poindexter v. EMI Record Grp. Inc.*, 11 CIV. 559 LTS JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) (single pickup note played on a piano that sounds for about two seconds and repeated on a loop is not subject to copyright protection); *McDonald v. Multimedia Ent'mt, Inc.*, No. 90 Civ. 6356(KC), 1991 WL 311921, at *4 (S.D.N.Y. July 19, 1991) ("it is extremely doubtful that [a] single note and its placement in the composition is copyrightable").

In addition, the horn hits are not original.  Similar horn hits were frequently used in prior works that pre-date "Chicago Bus Stop" and "Love Break."  SOF ¶¶ 1-4.  Examples of recordings with such similar horn "hits" are:  "Love is the Message" (1972), "T.S.O.P" (1974), "Ferry Avenue" (1975), "Get Down with the Philly Sound" (1975), etc.[7]  Indeed, many of these recordings were created by the same group, MFSB, that recorded "Chicago Bus Stop" when they later performed under the name Salsoul Orchestra. SOF ¶¶ 4, 9.  Shimkin himself, at his deposition, testified that the horns in "Love is the Message" sound identical to those in "Love Break," and in "Vogue."  SOF

---

[7] "I'm On Your Side" (1976), "Plenty Good Lovin'" (1976), "Sexy" (1975), "Give the People What They Want" (1975), "Living for the Weekend" (1975), "Get the Cream Off the Top" (1975), "Girl You Need a Change of Mind" (1973), "I'll Always Love My Mama" (1973), "I'm a Free Man" (1975), "The More I Get, the More I Want" (1977), "I Don't Love You Anymore" (1977), "Get Up, Get Down, Get Funk, Get Loose" (1978), "Bad Luck" (1975), "The Love I Lost" (1973), "Papa's Got a Brand New Bag" (1965), "Get Up Offa That Thing" (1976), "Say It Loud" (1968), "Cold Sweat" (1967), "Super Bad" (1970), "Mother Popcorn" (1969), "I Got the Feeling" (1968), "Express Yourself" (1970).  SOF ¶ 5.

---

¶ 7. The horn sound in "Love Is The Message" appears at 5:56-5:58, and in "Love Break" at 3:36-3:40. SOF ¶ 108.  Defendants encourage the Court to listen to these songs at these intervals to hear for itself that Shimkin was correct: the original horn sound does not lie with "Love Break." The location in additional prior art (listed in footnote 7 above), of substantially similar horn sounds to those in "Love Break," are identified in SOF ¶ 108.  This prior art also requires the conclusion that the single chord horn in "Vogue" is not original, and not subject to copyright protection.

### (2) <u>The congas and percussion in the "Vogue" 12-inch Remixes are also not subject to copyright protection</u>

With respect to the 12-inch Remixes, as discussed above, the vocals, congas, and percussion are likewise not subject to copyright protection.  The conga pattern heard on the 12-inch Remixes is the most prevalent pattern on conga, played for mambos, sones, guarachas, generally in salsa pieces, and also widely used in rock and jazz.  SOF ¶ 75. In fact, the exact conga part can be heard in many Latin songs, including Willie Colón and Ruben Blades' "Siembra" (1978) at  0:08 and continuing, or Típica '73's "Manono" (1972) at 0:00-0:14 and continuing. SOF ¶ 75, 109.  Along the same reasoning, the *sound effect* of a vibraslap or cymbal is also not subject to copyright protection.  *See Poindexter*, 2012 WL 1027639 at *4 ; *McDonald*, 1991 WL 311921, at *4.

### F. Plaintiff Concedes the Alleged Copying, Which Pettibone Denies, Cannot be Heard by the Ordinary Observer, Meaning the Two Works Are Not Substantially Similar

In its Complaint, Plaintiff alleges that the horn sample from "Love Break" in "Vogue" is purposefully "hidden" and "disguised," and, as a result not only cannot be heard by the ordinary observer, but was impossible to detect until supposedly new technology was invented in 2011.  SOF ¶ 96.  Plaintiff made those allegations in the transparent attempt to avoid the Copyright Act's three year statute of limitations, and this Court relied on those allegations in denying Defendants' Motion to Dismiss seeking

to limit the damages in this action to the three years preceding the filing of this action. Dkt. No. 29.

As a result, Plaintiff is now judicially estopped from taking a position that differs from those allegations. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779-80 (9th Cir. 2009); *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,* 139 F.3d 1234, 1239 (9th Cir. 1998) (judicial estoppel applies to same litigation); *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir. 1993). *See also Bistro Executive, Inc. v. Rewards Network, Inc.*, CV 04-4640 CBM MCX, 2006 WL 6849825, at *5 (C.D. Cal. July 19, 2006); *Roderick v. Mazzetti & Associates, Inc.*, C 04-2436 MHP, 2006 WL 1883328, at *5 (N.D. Cal. July 7, 2006); *O'Brien v. City of Tacoma*, C04-5458FDB, 2005 WL 2045882, at *2 (W.D. Wash. Aug. 24, 2005).

The law in this Circuit is clear: even where actual copying is conceded, if an ordinary observer would not detect the similarity as coming from the original copyrighted source, the similarity is not substantial, and no legally actionable infringement has occurred. *Newton*, 388 F.3d at 1192-93 (citing *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) (even if copying is established, no legal consequence attaches if ordinary observer would not recognize the appropriation); *see also* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B], at 13-8, 13-9 ("First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material […] If the answer is "yes," then one can conclude, *as a factual proposition*, that copying may have occurred. But the question remains whether such copying is actionable. In other words, *that first answer does not vouchsafe resolution of the legal question whether such copying as took place gives rise to liability for infringement*"); *Williams v. Kaag Mfrs., Inc.*, 338 F.2d 949 (9th Cir. 1964) (applying the ordinary observer test to determine substantial similarity), *accord* Nimmer, § 13.03[E], at 13-92, 13-94 (discussing ordinary observer test to determine substantial similarity); *Id.* § 13.03[A], at 13-30.2.

Here, as discussed above, at least with respect to the horn hits in "Vogue," Plaintiff has conceded that the alleged copying is not only not detectable by the "ordinary listener," but is actually "hidden" and "disguised."  Plaintiff is judicially estopped now from claiming otherwise.

In addition, as discussed fully above, the single chord horn hit in "Vogue," and the conga and percussion in the 12-inch Remixes, are not only not original or copyrightable, but exist in numerous recordings and musical compositions that pre-date "Love Break." SOF ¶¶ 1-4, 75.  As a result, the ordinary observer test also fails because the ordinary observer would not recognize the half second horn hit and ubiquitous conga/cymbal as originating with "Love Break," as is required to set forth a cognizable infringement claim.  *McIntosh v. N. California Universal Enterprises Co.*, 670 F. Supp. 2d 1069, 1087 (E.D. Cal. 2009) ("The test of infringement is whether the work is recognized by an ordinary observer as having been taken from the copyrighted source.") (quoting *Bradbury v. Columbia Broad. Sys., Inc.*, 287 F.2d 478, 485 (9th Cir. 1961)).

**G. Plaintiff's  Infringement Claims Also Must be Dismissed as *De Minimis***

"For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." *Newton*, 388 F.3d at 1192-93 (citing *Ringgold v. Black Entm't TV*, 126 F.3d 70, 74-75 (2d Cir. 1997)). "The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law.  Indeed, as Judge Learned Hand observed over eighty years ago: 'Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent.'" *Id.* (quoting *West Publ'g Co. v. Edward Thompson Co.*, 169 F. 833, 861 (E.D.N.Y. 1909)). This principle reflects the legal maxim, *de minimis non curat lex* (often rendered as, "the law does not concern itself with trifles"). *Id.* (citing *Ringgold*, 126 F.3d at 74-75).

The Ninth Circuit in *Newton* explained the correlation between the *de minimis* maxim and the general test for substantial similarity, noting that <u>for both</u>, the court looks to the response of the average audience, or ordinary observer, to determine whether a use is infringing. *Newton*, 388 F.3d at 1193. As the *Newton* court stated: "A leading case on *de minimis* infringement in [the Ninth] circuit is *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986), where we observed that a use is *de minimis* only if the average audience would not recognize the appropriation." *Newton*, 388 F.3d at 1193. "This observation reflects the relationship between the *de minimis* maxim and the general test for substantial similarity, which also looks to the response of the average audience, or ordinary observer, to determine whether a use is infringing." *Id.* (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). "To say that a use is *de minimis* because no audience would recognize the appropriation is thus to say that the use is not sufficiently significant." *Id.*

Here, as fully discussed above, both as pleaded by Plaintiff, and otherwise, the ordinary observer would not recognize the single chord horn hit or stab in "Vogue," or the conga and percussion in the 12-inch Remixes, as originating with "Love Break," and any use of those sounds in "Vogue" or the remixes, is *de minimis* as a matter of law.

In addition, copying is *de minimis* if the portion copied is neither qualitatively nor quantitatively significant in relation to the plaintiff's work as a whole. *Newton*, 388 F.3d at 1195 (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work.").

In *Newton*, the Court held that no reasonable juror could find the 3 note sampled portion of the composition to be a quantitatively or qualitatively significant portion of the composition as a whole. The Ninth Circuit noted that the segment lasted only "six seconds" of the plaintiff's work, and was roughly two percent of the four-and-a-half-

minute "Choir" sound recording.  *Newton*, 388 F.3d at 1195-96.  Qualitatively, the section of the composition was no more significant than any other section.  *Id.*

In this case, the single chord horn sound in "Love Break" has a duration of approximately .23 seconds (or less than a quarter of a second,  even less than in *Newton*). While standing alone or in a pattern of two hits, this chord makes multiple appearances in the original "Love Break," the cumulative duration is only 16 seconds out of more than seven minutes of recorded music.  SOF ¶¶ 26, 29.  In the instrumental version, it appears only for 11.5 seconds total.  SOF ¶ 27.  The chord is also not sounded for the first 4:39 (after more than half the recording has elapsed) in the original "Love Break", and not until 3:11 seconds have elapsed in the instrumental version, before which in both versions all of the most important material in the recording has been introduced. SOF ¶ 28.  The single chord horn hit is, as a result, both quantitatively and qualitatively *de minimis*.

Likewise, the vocals and congas with respect to the 12-inch Remixes are quantitatively and qualitatively *de minimis* as well.  First, as noted, these elements are not even present in the original "Love Break," or the instrumental version, but appear only in the remix titled "Ooh I Love It (Original Shep Pettibone 12" Remix).  SOF ¶ 31.  The fact that the vocals and congas do not even appear in the commercially released version of "Love Break," proves their insignificance. An ordinary observer would not identify any alleged copying of the ubiquitous congas/cymbal supposedly found in the "Vogue" 12-inch Remixes to be derived from the 12 inch remix of "Love Break."

Finally, with respect to Pettibone's alleged use of his own vocal in the lyric "Love Break," the utterance *does not* appear in the commercially released "Love Break," but appears only in a 12 inch remix of "Love Break," created by Pettibone, for 18.97 seconds of a 7:25 second song.  SOF ¶ 33. It of course, does not appear at all in "Vogue," but only for short periods of time in the 12-inch Remixes that Frasca and Shimkin co-created.  SOF ¶ 34.

### H. In the Alternative, Plaintiff's Copyright Infringement Claim Should be Limited to the Statutory Three Year Period

If any portion of this lawsuit remains, which it should not, the Court should limit Plaintiff's claim to alleged infringements that took place only between July 11, 2009 and the filing of Plaintiff's Complaint on July 11, 2012.

As held by the Court in its January 29, 2013 Order, where a plaintiff files a "copyright claim more than three years after it discovered or should have discovered infringement," "a plaintiff's right to damages is 'limited to those suffered during the three years prior to filing the suit." Dkt. No. 29 at 5 (citing *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 705-06 (9th Cir. 2004). "Courts typically do not allow plaintiffs to preserve an untimely claim through the delayed discovery rule when the material at issue has been widely disseminated through mass media publication." *Benjamin v. Walt Disney Co.*, CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007) (Court rejected plaintiff's claim that defendant concealed its infringement when the work was released nationwide and run on network television in advance of release). Those principles apply here.

"Vogue" is an iconic song recognized as one of the best dance songs of the nineties, and like the work in *Benjamin v. Walt Disney*, has been widely disseminated through various forms of mass media.[8] SOF ¶ 53. Furthermore, as discussed earlier, several years prior to Verse's acquisition of Salsoul in 2010, Salsoul investigated whether "Vogue" might contain a sample of the "Love Break" sound recording and decided not to pursue it. SOF ¶¶ 83-84, 89-92. This was communicated to Frasca during the due diligence

---

[8] Plaintiff admits "Vogue" has been listed on many "top ten" lists of the best dance song of the nineties and further admits "Vogue" was featured in the motion picture "The Devil Wears Prada," released in 2006. SOF ¶ 53. In 2008, *Billboard* ranked Madonna at number two on the *Billboard* Hot 100 All-Time Top Artists and she was also inducted into the Rock and Roll Hall of Fame in the same year. In 2012, she was crowned the "Greatest Woman In Music" by VH1. SOF ¶ 54.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

process of the Verse acquisition of Salsoul.   SOF ¶ 89-92. Salsoul's inaction and knowledge is imputed to Plaintiff.   1 *Nimmer on Copyright* § 5.01[B] (1999)( [a copyright] assignee [cannot] claim rights that would not have been available to his assignors); *Baker Hughes, Inc. v. Davis–Lynch, Inc.,* 2000 WL 33993301, at *9 (S.D.Tex.2000)(successor-in-interest charged with predecessors' knowledge).

Plaintiff also cannot provide <u>any</u> evidence to support its contention that nobody was able to "confirm" the alleged sampling until certain technology was available to it in 2011.   SOF ¶ 100.   To the contrary, Plaintiff admits that the purported technology used was a "wave analysis done by its expert," and also acknowledges that sound wave analysis has been around for decades.[9]   SOF ¶¶ 97-98.   Frasca and Shimkin also now state the sampling was obvious, and not hidden, and would be supposedly recognizable to an ordinary observer.   SOF ¶¶ 73, 101.   Plaintiff has completely changed its story. The only explanation for the allegations to the contrary in the Complaint is that they were concocted and Plaintiff believes its new story is more beneficial.   SOF ¶¶ 97-98.

Lastly, to the extent Plaintiff alleges the purported infringement is continuous, Plaintiff's claim is still limited to the three year statutory period.   *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-482 (9th Cir. 1994) (in a case of continuing copyright infringements, an action may be brought only for those acts that accrued within the three years preceding the filing of the suit).

## IV.   CONCLUSION

For the above reasons, Defendants respectfully requests the Court grant their Motion.

DATED:  May 6, 2013                              Respectfully submitted,

PAUL H. DUVALL
KING & BALLOW

By:  _____/s/Paul H. Duvall_____
           PAUL H. DUVALL

Attorney for  Defendant Shep Pettibone
and Lexor Music, Inc.

_____
[9]   Indeed, Pettibone's expert witness, Dr. Gage Averill, has used waveform analysis (with spectrographic display) on computers since 1989.  SOF ¶ 99.