Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
**KING & BALLOW**
6540 Lusk Blvd., Suite 250
San Diego, CA 92121
(858) 597-6000  Facsimile: (858) 597-6008

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
**WARGO & FRENCH LLP**
1888 Century Park East
Suite 1520
Los Angeles, CA 90067
(310) 853-6355  Facsimile: (310) 853-6333

Attorneys for Defendant Shep Pettibone
and Lexor Music, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VMG SALSOUL, LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>   vs.<br><br>MADONNA LOUISE CICCONE, professionally known as MADONNA, an individual; SHEP PETTIBONE, an individual; WB MUSIC CORPORATION, a Delaware corporation; BLUE DISQUE MUSIC COMPANY, INC., a corporation; WEBO GIRL PUBLISHING, INC.,  a California corporation; LEXOR MUSIC, INC., a New York corporation; and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No. CV 12-05967 BRO(CWx)<br><br>**DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: June 3, 2013**<br>**Time: 1:30 p.m.**<br>**Judge: Beverly Reid O'Connell**<br>**Courtroom: 14**<br><br>**Final Pretrial Conference: June 10, 2013**<br>**Jury Trial: June 18, 2013**<br><br>**Action Filed:  July 11, 2012** |

Pursuant to Federal Rules of Civil Procedure, Rule 56, and United States District Court, Central District of California, Local Rule 56-1, Defendants Robert Pettibone a/k/a Shep Pettibone ("Pettibone") and Lexor Music, Inc., hereby submit this Separate Statement of Uncontroverted Facts and Conclusions of Law in support of his Motion for Summary Judgment.

## I.
## UNCONTROVERTED MATERIAL FACTS

### A. The "Philly" Sound

| Undisputed Fact | Evidentiary Support |
|---|---|
| 1. In the early 1970s, a musical group by the name of Mother, Father, Sister, Brother ("MFSB") created various hit songs containing simple chords of horns and other harmonics, which were commonly referred to as the "Philadelphia or 'Philly' Sound." | 1. Expert Witness Report of Dr. Gage Averill (attached to the Declaration of Paul H. Duvall ("Duvall Decl.") as Exhibit 1); Declaration of Dr. Gage Averill ("Averill Decl." (attached to Duvall Decl. as Exhibit 14)) at ¶ 6. |
| 2. These horns and instruments comprising the Philly Sound were present in many other songs by various artists, including The O'Jays, Eddie Kendricks, The Spinners, and Teddy Pendergrass. | 2. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |
| 3. The MFSB song in particular, "Love is the Message," was an instrumental song that embodied these simple horn chords and Philly Sounds. | 3. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |
| 4. MFSB also recorded many other songs in the 1970s that contained these same | 4. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |

| | |
|---|---|
| horns and Philly Sounds, including "T.S.O.P.," "Ferry Avenue," "Get Down With the Philly Sound," and "Plenty Good Lovin'." | |
| 5. The alleged copied horn hits are contained in the 1973 work "Love is the Message," and were frequently used in songs from that time period. | 5. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |
| 6. Frasca admitted in his deposition: "Well, I guess if you are asking is that chord in other music, I would assume yes, because there's a limited amount of chords." | 6. 04/17/13 Deposition of Curt Frasca ("04/17/13 Frasca Depo.," attached to Duvall Decl. as Exhibit 3) at 100:8-11. |
| 7. When questioned about the horn sound in "Vogue" at his deposition, Shimkin himself identified it as being the same horn sound as in "Love Is The Message" – not "Love Break." | 7. Deposition of Anthony Shimkin "Shimkin Depo" (attached to Duvall Decl. as Exhibit 6) at 121:21-123:17; 128:20 - 129:9; 149:24-150:5. |
| 8. Almost all of popular music is accompanied by a continuous stream of chords on pianos, guitars, horn sections, or other instruments, and all of Western music operates on the assumption that melodies can be harmonized with chords. | 8. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 7. |
| 9. MFSB eventually became the house-band for the New York City based record label, Salsoul Records, and was called the Salsoul Orchestra. | 9. Deposition of Shep Pettibone ("Pettibone Depo.," attached to Duvall Decl. as Exhibit 2) at 17:12-13. |

## B. Creation of "Chicago Bus Stop (Ooh, I Love It)"

| Undisputed Fact | Evidentiary Support |
|---|---|
| | |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Evidentiary Support |
|---|---|
| 10. In or around 1975, Vincent Montana, Jr. ("Montana") wrote a song for Salsoul Records entitled, "Chicago Bus Stop (Ooh, I Love It)" (referred to hereafter as "Chicago Bus Stop"). | 10. Pettibone Depo. at 15:25-16:1. |
| 11. "Chicago Bus Stop" was recorded by the Salsoul Orchestra, and incorporated material from MFSB's prior work, "Love is the Message." | 11. Pettibone Depo. at 15:23-16:7; Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |

### C. **Creation of "Ooh, I Love It (Love Break)"**

| Undisputed Fact | Evidentiary Support |
|---|---|
| 12. In or around 1982, Pettibone, a highly skilled producer, was asked by Salsoul Records' owner, Ken Cayre, to use "Chicago Bus Stop" as inspiration to create a new composition and recording. | 12. Pettibone Depo. at 15:21-16:11; 17:20;  Declaration of Shep Pettibone (attached to Duvall Decl. as Exhibit 9) at ¶ 1, 2. |
| 13. As the producer, Pettibone was the creative force behind "Love Break." | 13. Duvall Decl. Ex. 9 at ¶ 2. |
| 14. In order to create what became "Love Break," the bass player and the drummer from "Love is the Message," who were members of the Salsoul Orchestra in 1982, performed and recorded bass and drums parts for use in "Love Break." | 14. Pettibone Depo. at 16:17-23; 18:2-3. |
| 15. The recording contained essentially the same horn, string, bass, and drum parts from the group's earlier work on "Love is the Message." | 15. Pettibone Depo. at 16:6-23; Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 14. |
| 16. Pettibone also composed original material and included a Rhodes, an | 16. Pettibone Depo. at 14:13-16; 18:3-4, 14-20. |

| | |
|---|---|
| organ, all of the percussion to the song, and a tape recording he made of himself and others singing the lyrics "Love Break." | |
| 17. The new musical work that Pettibone created became known as the song and the recording, "Ooh, I Love It (Love Break)" a/k/a "Love Break." | 17. Pettibone Depo. at 14:22-24; 20:22-25. |
| 18. While Love Break was released in 1983, the instrumental version of "Love Break" (alleged to have been sampled in "Vogue,") was not released until 1992, more than 3 years after the release of "Vogue." | 18. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 9. |
| 19. "Love Break" differs substantially from "Chicago Bus Stop." | 19. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 14. |
| 20. "Love Break" is much closer compositionally to "Love is the Message," with the "Love is the Message" bass player and drummer playing the rhythm used throughout "Love Break," and with the string alternations also heard throughout most of "Love Break." | 20. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 14. |
| 21. These musical components structure the harmonic content of "Love Break," create the rhythm section, and establish the mood with the alternating string sounds and their imitation on voice and vibes. | 21. Duvall Decl. Ex. 1;   Duvall Decl. Ex. 14 at ¶ 14. |
| 22. This rhythm section is used as the base for a new rap composition by Pettibone, accompanied by additional percussion, | 22. Duvall Decl. Ex. 1;   Duvall Decl. Ex. 14 at ¶ 14. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| organ, and Rhodes. | |
| 23. The only two sections of thematic material from "Chicago Bus Stop" occupy a minor part of the total duration of the recording, two minutes and fifteen seconds of a seven-minute and twenty-five second piece. | 23. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 15. |
| 24. Intentionally Omitted | 24. Intentionally Omitted |
| 25. The horn hits can be heard in within one minute and forty-two seconds of the recording, but sound for a cumulative duration of only sixteen seconds. | 25. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 15. |
| 26. The horn chord in question in "Love Break" has a duration of approximately .23 seconds. | 26. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 9. |
| 27. In the instrumental version, it appears only for 11.5 seconds total. | 27. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 9. |
| 28. The chord is also not sounded for the first 4:39 (after more than half the recording has elapsed) in the original "Love Break", and not until 3:11 seconds have elapsed in the instrumental version, before which in both versions all of the most important material in the recording has been introduced. | 28. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 10. |
| 29. While standing alone or in a pattern of two hits, this chord makes multiple appearances in "Love Break." | 29. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 9. |
| 30. Plaintiff has no evidence that fans | 30.Expert Witness Report of Dr. Jason |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| gravitated to or sought out Madonna's "Vogue" because of a possible 3.45 second sample contained therein, nor any evidence that they would have even if there were. | King (attached to Duvall Decl. as Exhibit 13) at 16. |
| 31. The vocals and congas are not even present in the original "Love Break," or the instrumental version, but appear only in the remix titled "Ooh I Love It (Original Shep Pettibone 12" Remix). | 31. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 11. |
| 32. Intentionally Omitted | 32. Intentionally Omitted |
| 33. With respect to the alleged use of the words "Love Break," the utterance *does not* appear in the commercially released "Love Break", but only appears in a 12 inch remix of "Love Break," created by Pettibone, for 18.97 seconds of a 7:25 second song. | 33. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 13. |
| 34. It of course, does not appear at all in "Vogue," but only for short periods of time in 12-inch Remixes that Frasca and Shimkin co-created. | 34. Duvall Decl. Ex. 1;  Duvall Decl. Ex. 14 at ¶ 13. |
| 35. Intentionally Omitted | 35. Intentionally Omitted |
| 36. With respect to the sound recording of "Love Break," Pettibone was credited only with "remixing" and "additional production". | 36. Pettibone Depo. at 19:18-23. |
| 37. There is no oral or written agreement providing that "Love Break" was being created by Pettibone as a work-for-hire, and/or assigning Pettibone's copyright interest to Salsoul (or anyone else). | 37. Pettibone Depo. at 12:10-17; 04/17/13 Frasca Depo. at 235:11-16. |

| | |
|---|---|
| 38. Intentionally Omitted | 38. Intentionally Omitted |
| 39. Pettibone only went into the Salsoul Records office perhaps once a month. | 39. Duvall Decl. Ex. 9 at ¶ 2. |
| 40. Salsoul never applied for a copyright registration for the musical composition or sound recording of "Love Break," and none exists. | 40. 04/17/13 Frasca Depo. at 228:9-229:10. |
| 41. Salsoul Records had no right to assign additional projects to Pettibone-Pettibone was simply asked each time whether he would like to complete a specific project. | 41. Pettibone Depo. at 15:20-16:11. |
| 42. Pettibone did no further work for Salsoul Records after his completion of the "Love Break" sound recording and has not spoken to owner Ken Cayre since. | 42. Pettibone Depo. at 22:21-23:6. |

**D.  Creation of "Vogue"**

| Undisputed Fact | Evidentiary Support |
|---|---|
| 43. In or around 1989, Craig Kostich, the head of dance music at major record label Warner Brothers Records, asked Pettibone to create a song for Madonna. | 43. Pettibone Depo. at 23:19-24:5; 25:22-26:10. |
| 44. This song became "Vogue" for which Pettibone created the music protected by the musical composition and sound recording. | 44. Pettibone Depo. at 23:19-24:5; 25:22-26:10. |
| 45. The initial recording of "Vogue" was done by Pettibone and programmer, Alan Friedman ("Friedman"), at Friedman's residence. | 45. Declaration of Alan Friedman (attached to Duvall Decl. as Exhibit 5) at ¶ 2;  Pettibone Depo. at 26:11-12; 30:18-21. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| 46. Friedman also worked directly with Pettibone at the Overdubbing sessions for "Vogue." | 46. Duvall Decl. Ex. 5 at ¶ 7. |
| 47. Friedman's job as the programmer of "Vogue" was to run a sequencer, which is a computer program that is designed to trigger events out of various keyboards. | 47. Deposition of Alan Friedman ("Friedman Depo.," attached to Duvall Decl. as Exhibit 4) at 10:13-18. |
| 48. Pettibone never asked Friedman to sample "Love Break" in the creation of "Vogue." | 48. Duvall Decl. Ex. 5 at ¶ 5. |
| 49. "Vogue" was commercially released on Madonna's "I'm Breathless" album, and later as a single in 1990. | 49. Frasca Depo. at 86:8-17; 122: 2-18; Pettibone Depo. at 31:3-9; 39:7-13; 42:17-20; Shimkin Depo. at 23:10-11 |
| 50. The only allegation of copying in this case with respect to the single and album version of "Vogue" is that it supposedly contains a single-chord horn sound from "Love Break." | 50. 04/17/13 Frasca Depo. at 107:21-110:6. |
| 51. Pettibone created the single chord horn sound using a device called a "proteus emulator," which has pre-recorded, factory installed, live sounds on it. | 51. Pettibone Depo. at 32:7-33:2. |
| 52. While Shimkin has testified in deposition that Pettibone told Friedman to sample the "Love Break" horn stabs for use in "Vogue," Friedman, who was with Pettibone during the entire recording process, and specifically for the recording of the horn sound in "Vogue," testified that he was never asked to sample "Love Break," and has no knowledge of it or any other song | 52. Duvall Decl. Ex. 5 at ¶ 5. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| being copied into "Love Break." | |
| 53. Plaintiff admits "Vogue" has been listed on many "top ten" lists of the best dance song of the nineties and further admits "Vogue" was featured in the motion picture "The Devil Wears Prada," released in 2006. | 53. Dkt. No. 1 (Complaint) at ¶ 17. |
| 54. In 2008, *Billboard* ranked Madonna at number two on the *Billboard* Hot 100 All-Time Top Artists and she was also inducted into the Rock and Roll Hall of Fame in the same year. In 2012, she was crowned the "Greatest Woman In Music" by VH1. | 54. Duvall Decl. Ex. 12. |

**E. Creation of the "Vogue" 12 Inch Post Production Remixes**

| Undisputed Fact | Evidentiary Support |
|---|---|
| 55. Plaintiff produced at Frasca's deposition, for the very first time, a 12" post production remix vinyl that contains three additional remixes of "Vogue" that Plaintiff also claims infringe the "Love Break" sound recording: "Vogue (12" version)," "Vogue (Bette Davis Dub)," and "Vogue (Strike-A-Pose Dub)." | 55. 04/17/13 Frasca Depo. 116:2-117:6. |
| 56. After the release of "Vogue", Pettibone, Frasca, and Shimkin, are credited as working together on three "Vogue" club remixes released on a separate 12 inch post production remix vinyl entitled: "Vogue (12'' Version), "Vogue (Bette Davis Dub)," and | 56. 04/17/13 Frasca Depo. at 132:18-22; 134:6-8; 160:4-8; Shimkin Depo. at 26:18-23; 34:12-18; Duvall Decl. Ex. 8. |

| | |
|---|---|
| "Vogue (Strike-a-Pose Dub)." | |
| 57. At this time, Shimkin was working at Soundworks, the studio where "Vogue" was remixed, and served as Pettibone's editor and assistant engineer. | 57. Shimkin Depo. at 18:7-11; 19:11-17. |
| 58. Shimkin was credited on the 12-inch Remixes as the Editor of the three remixes. | 58. Shimkin Depo. at 23:14-16; Duvall Decl. Ex. 8. |
| 59. Shimkin explained at his deposition, "I often took part in programming or the recording process, the mixing process." | 59. Shimkin Depo. at 23:23-24. |
| 60. When asked whether it would be fair to say that Shimkin was *not* a writer or involved in the production or creation of "Vogue," Shimkin replied, "No." | 60. Shimkin Depo. at 24:14-19. |
| 61. Shimkin stated, "I was together with [Pettibone] in the writing of ["Vogue,"] so to speak, in the production of ["Vogue,"] the recording of ["Vogue,"] and directing of programmers and engineers." | 61. Shimkin Depo. at 24:23-25:2. |
| 62. Shimkin stated that Pettibone "included [him] very much so in every respect of the process." | 62. Shimkin Depo. at 29:9-10. |
| 63. With respect to these additional remixes of "Vogue," Shimkin testified that he would "often sample vocal phrases from within the songs, so when we created extended versions, I would then play these vocal samples in a rhythmic manner for certain portions of the extended remix, in the dub and in | 63. Shimkin Depo. at 26:18-23. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| other versions." | |
| 64. Shimkin would also "act as engineer in creating some of the elements of arrangements of the mix, so to speak, muting certain sections, adding delay; creative things that you would do in the process of mixing a record, and edit the final product." | 64. Shimkin Depo. at 26:24-27:7. |
| 65. Shimkin specifically acknowledged the twelve-inch version, the "Bette Davis Dub", and "maybe another dub," as remixes that he personally worked on. | 65. Shimkin Depo. at 34:12-18 |
| 66. Frasca worked alongside Shimkin and Pettibone as an assistant engineer on the "Vogue" post production remixes, and is credited on it as Assistant Engineer. | 66. 04/17/13 Frasca Depo. at 132:18-22; 160:4-8. |
| 67. Intentionally Omitted | 67. Intentionally Omitted |
| 68. Frasca is credited on the remix record of "Vogue" as Assistant Engineer. | 68. 04/17/13 Frasca Depo. at 132:18-22; 160:4-8. |
| 69. Intentionally Omitted | 69. Intentionally Omitted |
| 70. Frasca testified in deposition that he believed, as early as 1990 when he was working on the "Vogue" remixes, that the original 7 inch version of "Vogue" and its various remixes contained a sample of the horns from the "Love Break" sound recording that Pettibone created in 1982. | 70. 04/17/13 Frasca Depo. at 44:16-18; 45:25-46:3. |
| 71. The remixes created by Pettibone, Shimkin, and Frasca were released on a | 71. Duvall Decl. Ex. 7 at ¶ 4; Ex. 8. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| separate 12 inch vinyl in 1990, and were entitled "Vogue (12'' Version), "Vogue (Bette Davis Dub)," and "Vogue (Strike-a-Pose Dub)." | |
| 72. Pettibone, Shimkin, and Frasca are each credited on this remix album as producer, editor, and assistant engineer respectively. | 72. Duvall Decl. Ex. 8. |
| 73. With respect to the "Vogue" remixes, Frasca testified that he believes that each contains samples from the "Love Break" sound recording in addition to the horn "stab", including congas, percussion, and vocals. | 73. 04/17/13 Frasca Depo. at 108:23-109:10. |
| 74. While Frasca claims he has no personal knowledge that the remixes in fact contain samples, and of course denies that he added any samples himself, he now claims that they do, and points to vocals in those remixes (on which he worked as the engineer), that say "Love Break." | 74. Frasca Depo. at 108:23-109:10; 145:23-156:4. |
| 75. The conga pattern heard in each remix of "Vogue" is the most prevalent pattern on conga, played for mambos, sones, guarachas, generally in salsa pieces, and also widely used in rock and jazz. The exact conga part can be heard in many Latin songs, including Willie Colón and Ruben Blades' "Siembra" (1978) or Típica '73's "Manono" (1972). | 75. Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 8. |
| 76. Pettibone, Shimkin, and Frasca were more than just co-workers: Shimkin | 76. Shimkin Depo. at 54:8-55:7; 19:18-21; 31:12-23; 04/17/13 Frasca |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| lived with Pettibone rent free in New York City for almost five years and engaged in a romantic relationship with Pettibone that Pettibone ultimately ended; Frasca and Shimkin worked for Pettibone for many years and the three of them vacationed together in the Carribean and enjoyed frequent getaways to Pettibone's home in the Poconos; and both Shimkin and Frasca credit Pettibone for helping them establish their music production careers. | Depo. at 50:5-51:15; 70:5-8; 161:4-7; Duvall Decl. Ex. 9) at ¶ 2. |
| 77. Frasca further testified that there are two more remixes of "Vogue" that allegedly contain samples of the "Love Break." | 77. 04/17/13 Frasca Depo. at 122:19-123:4. |
| 78. Yet, there is no evidence in this record that these two remixes titled, "Vogue (Shep's On The Fly)" and "Vogue (The Shep Pettibone Integral Mix)" were created or authorized by any of the Defendants. | 78. Duvall Decl. Ex. 7 at ¶ 3; Duvall Decl. Ex. 9 at ¶¶ 5-6. |
| 79. There is no evidence in this record of these two remixes ever having been played on the radio or commercially released. | 79. Duvall Decl. Ex. 7 at ¶ 3. |
| 80. Frasca admitted that it was possible none of the Defendants had anything to do with the creation of these remixes and that they were potentially created by unauthorized third parties. | 80. 04/17/13 Frasca Depo. at 192:7-11. |
| 81. Frasca further admitted that he had no evidence regarding whether these remixes were ever played on the radio | 81. 04/17/13 Frasca Depo. at 192:17 – 193:7. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| or otherwise exploited by any of the Defendants, or whether they generated any income. | |
| 82. Intentionally Omitted | 82. Intentionally Omitted |

### F.  Salsoul Records investigates "Vogue's" Possible Sampling of "Love Break"

| Undisputed Fact | Evidentiary Support |
|---|---|
| 83. Several years prior to Verse's acquisition of Salsoul, Salsoul discovered that "Vogue" might contain a sample of the "Love Break" sound recording. | 83. Declaration of Glenn Larusso (attached to Duvall Decl. as Exhibit 10) at ¶ 1. |
| 84. Salsoul investigated the matter, even bringing in the drummer from "Love Break" to listen to "Vogue" and determine whether it contained samples from "Love Break." | 84. Duvall Decl. Ex. 10 at ¶ 1. |
| 85. The drummer did not believe that there were samples from "Love Break" in "Vogue," and further was unable to identify any portion of "Love Break" in "Vogue" at all. | 85. Duvall Decl. Ex. 10 at ¶ 2. |
| 86. Salsoul decided not to pursue any claim because it determined that there was no use of "Love Break" in "Vogue," or, if there were any at all, it was minimal and insufficient to support an infringement claim. | 86. Duvall Decl. Ex. 10 at ¶ 3. |
| 87. Intentionally Omitted | 87. Intentionally Omitted |
| 88. Frasca hired Shimkin as Vice- | 88. Shimkin Depo. at 60:10-16; 73:6- |

| | |
|---|---|
| President of Music Production at Verse in August, 2011, just eleven months before the filing of this Complaint. | 12; 04/17/13 Frasca Depo. at 12:1-7; 61:10-12. |
| 89. Prior to finalizing the sale of Salsoul to Verse in 2010, Frasca asked Salsoul executive, Glen Larusso, why Salsoul had not pursued any claim of infringement regarding the supposed use of a sample of "Love Break" in "Vogue." | 89. Duvall Decl. Ex. 10 at ¶ 4. |
| 90. Larusso responded that Salsoul was aware of the potential claim, but chose not to pursue it because any supposed use was minimal. | 90. Duvall Decl. Ex. 10 at ¶ 4. |
| 91. Larusso further told Frasca that "Vogue" was twenty years old, so the statute of limitations would make any claim not worth pursuing. | 91. Duvall Decl. Ex. 10 at ¶ 4. |
| 92. Frasca does not deny this conversation with Larusso took place. | 92. Frasca Depo. at 170:13-21; 182:16-19. |
| 93. Verse was nonetheless particularly interested in acquiring the Salsoul Records catalog because it believed that there were potential sampling claims which might generate money for Verse, including "Love Break," due to what Frasca claims he perceived while working on "Vogue," in 1990. | 93. 04/17/13 Frasca Depo. at 42:17-22; 162:5-9. |

### G. Plaintiff's Complaint for Copyright Infringement of "Love Break"

| Undisputed Fact | Evidentiary Support |
|---|---|
| 94. Plaintiff's Complaint, brought *twenty-* | 94.  Dkt. No. 1 at ¶¶ 19, 25, Ex. D to |

| | |
|---|---|
| *two years* after the release of the supposedly infringing "Vogue," alleges that portions of "Vogue" are intentionally sampled from the "Love Break" sound recording throughout, yet the expert report attached to the Complaint only references a single chord horn sound. | Dkt. No.1. |
| 95. The term "horn hit" or "horn stab" is often used to refer to this kind of short, percussive use of a chord, an effect commonly used in the Philly sound, in funk, in up-tempo soul, and in disco. | 95.Duvall Decl. Ex. 1; Duvall Decl. Ex. 14 at ¶ 6. |
| 96. Plaintiff further alleges that the purportedly copied portions of the "Love Break" sound recording were "deliberately hidden," and "disguised," could not be heard by an ordinary observer,  and were only detected when "[Plaintiff] specifically looked for the sample, with the technology first available to it in 2011." | 96. Dkt. No. 1 at ¶ 23. |
| 97. Based upon Frasca's own admissions in deposition, this allegation about "new technology" was knowingly false, and Plaintiff also now denies other material facts pleaded by it to be true. | 97.04/17/13 Frasca Depo. at164:14-167:25; 194:3-195:10. |
| 98. The "technology" referred to by Plaintiff is wave analysis conducted by an expert. | 98. Responses of Plaintiff to Pettibone's First Set of Interrogatories (attached to Duvall Decl. as Exhibit 11) at No. 17. |
| 99. Intentionally Omitted | 99. Intentionally Omitted |
| 100.    Plaintiff cannot provide any | 100.    04/17/13 Frasca Depo. at |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| evidence to support its contention that nobody was able to "confirm" the alleged sampling until certain technology was available to it in 2011. | 180:14-184:14. |
| 101.    Plaintiff has recently changed its position and now claims that the alleged horn hits are detectible to the ordinary observer. | 101.    04/17/13 Frasca Depo. at 162:20-163:7. |
| 102.    Plaintiff claims to own the copyright registrations for "Love Break" through its acquisition of Salsoul, the registration Plaintiff attaches to its Complaint is for the work, "Chicago Bus Stop (Ooh, I Love It)," which was written by Montana and recorded by the Salsoul Orchestra in 1975. | 102.    Dkt. No. 1 at ¶¶ 12-13; Dkt. No. 1 at Exhibit A and B. |
| 103.    The words, "Love Break," are not found on either registration, contrary to the false assertion in Plaintiff's Complaint. | 103.    Dkt. No. 1 at Exhibit A and B. |
| 104.    The attached copyright registrations to Plaintiff's Complaint are dated May, 1976 and November, 1975 respectively, yet "Love Break" was not even created by Pettibone until 1982. Plaintiff also attaches not a registration, but an irrelevant November 1975 Application for a sound recording titled "The Sasloul [sic] Orchestra." | 104.    Dkt. No. 1 at Exhibit A and B; Pettibone Depo. at 17:20. |
| 105.    It was only revealed through recent discovery and during Frasca's deposition that Plaintiff's confusing Complaint is alleging copyright | 105.    04/17/13 Frasca Depo. at 228:25-229:10. |

| | |
|---|---|
| infringement of the "Love Break" sound recording, and not the "Chicago Bus Stop (Ooh, I Love It)" sound recording. | |
| 106. Plaintiff makes no claim regarding the "Love Break" musical composition and therefore, only the sound recording is at issue in this action. | 106. Dkt. No. 1 at ¶ 25. |
| 107. As conceded by Frasca, Plaintiff alleges copyright infringement of a sound recording for which it has no copyright registration. | 107. 04/17/13 Frasca Depo. at 228:9-229:10. |
| 108. The horn sound in "Love Is The Message" appears at 5:56-5:58, and in "Love Break" at 3:36-3:40, and substantially similar horn sounds to those in "Love Break" appear in the following songs at the following times:<br><br>MFSB – "I'm On Your Side" at 0:34; South Shore Commission – "Free Man" at 0:02; Teddy Pendergrass – "Bad Luck" at 2:09-2:12; MFSB – "Plenty Good Lovin'" at 2:08-2:12; MFSB – "Sexy" at 1:04 and 1:08; James Brown – "I Got the Feeling" at 0:30; and James Brown – "Mother Popcorn by James Brown" at 0:02; The Intruders – "I'll Always Love My Mama" at 5:48. | 108. Duvall Decl. Ex. 15. (concurrently being lodged herewith); |
| 109. With respect to the 12-inch Remixes, the exact conga part can be heard in many Latin songs, including Willie Colón and Ruben Blades' "Siembra" (1978) at 0:08 and continuing, or Típica '73's "Manono" | 109. Duvall Decl. Ex. 15. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| (1972) at 0:00-0:14 and continuing | |
|---|---|

## II.

## CONCLUSIONS OF LAW

### A. Plaintiff Lacks Standing to Bring Suit for Infringement of "Love Break"

| Conclusions of Law | Authority |
|---|---|
| 110.   Registration of a work is a prerequisite to a suit for copyright infringement and must be pleaded. | 110.   17 U.S.C. § 411(a); *Pamlioff v. Giant Records, Inc.*, 1992 Copr. L. Dec. P 26865, 1991 WL 334916 (N.D. Cal. Oct. 28, 1991). |
| 111.   Plaintiff claims that the sound recording "Love Break" (and more specifically, an instrumental version of Love Break not released until 1992, two years following the release of "Vogue"), was infringed. | 111.   SOF ¶ 18. |
| 112.   Plaintiff attached to the Complaint only the copyright registration to the musical composition "Chicago Bus Stop" and an application for copyright for a sound recording titled "The Sasloul [sic] Orchestra." | 112.   SOF ¶ 102. |
| 113.   Neither "Chicago Bus Stop" or "Sasloul Orchestra" is the recording that is alleged to be infringed in this action. | 113.   SOF ¶¶ 94, 105. |
| 114.   Because Plaintiff does not have a copyright registration for either the sound recording or musical composition "Love Break," however, Plaintiff lacks standing to bring this action and it must be dismissed. | 114.   *Pringle v. Adams*, SACV 10-1656-JST RZX, 2012 WL 1103939 (C.D. Cal. Mar. 30, 2012); *Identity Arts v. Best Buy Enter. Servs. Inc.*, C 05-4656 PJH, 2007 WL 1149155 (N.D. |

| | |
|---|---|
| | Cal. Apr. 18, 2007). |

**B. Pettibone Cannot be Sued for Infringement of the "Love Break" Sound Recording Because he is a Co-Author**

| Conclusions of Law | Authority |
|---|---|
| 115.   A co-author of a joint work cannot be liable to another co-author for infringement of the copyright. | 115.   *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984). |
| 116.   A joint work is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." | 116.   17 U.S.C. § 101. |
| 117.   The question of whether a defendant is a co-author of the copyright in question should be decided first, because if it should be determined that the defendant is such a co-author, the infringement action may be ended without further analysis since a copyright owner cannot infringe against its own copyright. | 117.   *See Richmond v. Weiner*, 353 F.2d 41 (9th Cir. 1965). |
| 118.   The question of co-authorship is proper for summary judgment where undisputed facts demonstrate that the defendant is a co-author. | 118.   *Ahanchian v. Xenon Pictures, Inc.*, 403 Fed.Appx. 166 (9th Cir. 2010). |
| 119.   As a general rule, the author is the party who actually creates the work, or who translates an idea into a fixed, tangible expression entitled to copyright protection. | 119.   17 U.S.C. § 102. |

| | |
|---|---|
| 120.   It is undisputed that Pettibone was asked by Salsoul's owner, Ken Cayre, to create the sound recording for "Love Break." | 120.   SOF ¶ 12. |
| 121.   Pettibone took the original 1975 master recording of "Chicago Bus Stop" as inspiration and added multiple elements to it. | 121.   SOF ¶¶ 12-16. |
| 122.   The bass player and drummer from MFSB/Salsoul Orchestra performed and recorded different bass and drum parts. | 122.   SOF ¶ 14. |
| 123.   Pettibone enhanced the strings already existing in "Chicago Bus Stop," and composed original material with a Rhodes, organ, and all of the percussion. | 123.   SOF ¶¶ 15-16. |
| 124.   Pettibone contributed a vocal performance, or "rap," made by Pettibone and other singers, with the lyrics of "Love Break" over the track. | 124.   SOF ¶ 22. |
| 125.   The "Love Break" sound recording is an entirely new work created by Pettibone. | 125.   SOF ¶¶ 12-16, 22. |
| 126.   Copyright ownership vests initially in the author or authors of the work. | 126.   17 U.S.C. § 201(a). |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| 127.   By operation of copyright law, Pettibone is an author of the "Love Break" sound recording because he is the creator. | 127.   17 U.S.C. § 201(a). |

### C. Pettibone was an Independent Contractor of Salsoul Records, and therefore, the "Love Break" Sound Recording was Not a Work Made for Hire

| | |
|---|---|
| 128.   The Copyright Act permits works to be made "for hire" only in very narrow circumstances:  (1) a work prepared by an *employee* within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties *expressly agree in a written instrument signed by them that the work shall be considered a work made for hire*. | 128.   17 U.S.C. § 101. |
| 129.   If the work is for hire, the employer or other person for whom the work is prepared is considered the author and owns the copyright, unless there is a written agreement to the contrary. | 129.   17 U.S.C. § 201(b). |
| 130.   Sound recordings are not included as one of the enumerated categories under works specially commissioned qualifying as works for hire. | 130.   17 U.S.C. § 101. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| 131.    There was never a written agreement between Pettibone and Salsoul expressly stating that the "Love Break" sound recording was a work for hire | 131.    SOF ¶ 37. |
| 132.    A plaintiff cannot establish the copyrights in question as works made for hire when the creators of the work are independent contractors. | 132.    *Jou v. Accurate Research*, 73 Fed.Appx. 964 (9th Cir. 2003). |
| 133.    Creators of works are independent contractors when the creators are highly-skilled, the plaintiff does not retain the right to control the manner or means by which the creators perform their work, the creators often work on their own equipment even though the plaintiff provides equipment, the creators are hired for short periods of time and for discrete projects, and the plaintiff does not provide any employee benefits or withhold any taxes from the creators' pay. | 133.    *Jou v. Accurate Research*, 73 Fed.Appx. 964 (9th Cir. 2003). |
| 134.    Pettibone is a highly skilled producer who was asked by Salsoul to create a specific project – the "Love Break" sound recording. | 134.    SOF ¶ 12. |
| 135.    No oral or written agreement was entered into between Pettibone and Salsoul, and no terms of employment were ever discussed. Plaintiff has no evidence revealing otherwise. | 135.    SOF ¶ 37. |
| 136.    Pettibone only went into Salsoul's offices perhaps once a month, and, as the producer, was the creative force behind "Love Break." | 136.    SOF ¶¶ 13, 39. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| 137.   Salsoul asked Pettibone to work on other projects prior to "Love Break," but had no right to assign additional projects to Pettibone -- Pettibone was simply asked each time whether he would like to complete a specific project. | 137.   SOF ¶ 41. |
| 138.   Pettibone did no further work for Salsoul after his completion of the "Love Break" sound recording and has not spoken to owner Ken Cayre since. | 138.   SOF ¶ 42. |
| 139.   Pettibone was an independent contractor of Salsoul Records, and therefore, the "Love Break" sound recording was not a work made for hire. | 139.   SOF ¶¶ 41-42. |

**D. Pettibone is a Co-owner of the "Love Break" Musical Composition**

| | |
|---|---|
| 140.   Copyright ownership vests in the author of the work. | 140.   17 U.S.C. § 201(a). |
| 141.   Pettibone contributed significant additional elements in "Love Break" to what was in "Chicago Bus Stop" and wrote and performed the lyrics in the composition. | 141.   SOF ¶¶ 13, 16, 22. |
| 142.   Pettibone is also a co-owner of the "Love Break" musical composition because he created the composition, and there exists no work-for-hire agreement or assignment of copyright concerning the composition.. | 142.   17 U.S.C. § 201(a). |

**E. Plaintiff Brings This Action with Unclean Hands**

| Conclusions of Law | Authority |
|---|---|
| 143.   The defense of unclean hands applies | 143.   *Supermarket of Homes v. San* |

| | |
|---|---|
| in copyright infringement cases to prevent a plaintiff from obtaining relief both in law and in equity. | *Fernando Valley Bd.,* 786 F.2d 1400, 1408 (9th Cir.1986). |
| 144.   Whether to apply the defense of unclean hands is within the court's sound discretion. | 144.   *TWA v. American Coupon Exchange,* 913 F.2d 676, 695 (9th Cir.1990). |
| 145.   The defense will apply to bar recovery where the plaintiff's wrongful act relates to the subject matter of the plaintiff's claims. | 145.   *Fuddruckers, Inc., v. Doc't B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987). |
| 146.   In applying the doctrine, "[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." | 146.   *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963). |
| 147.   The defense of unclean hands applies in an action at law. | 147.   *Tempo Music, Inc. v. Myers,* 407 F.2d 503, 507 & n. 8 (4th Cir.1969). |
| 148.   It would be inequitable for the party to recover damages when the party's action led, in part, to the infringement. | 148.   *Tempo Music, Inc. v. Myers,* 407 F.2d 503, 507 & n. 8 (4th Cir.1969). |
| 149.   Plaintiff produced at Frasca's deposition, for the very first time, the 12-inch Remixes that, as discussed above, contain three additional recordings of "Vogue" that Plaintiff also claims infringe the "Love Break" sound recording. | 149.   SOF ¶ 55. |
| 150.   Plaintiff asserts the 12-inch Remixes sample a vocal line, congas, and percussion from "Love Break," in addition to the single chord horn stab. | 150.   SOF ¶ 73. |

| | |
|---|---|
| 151.   Plaintiff's founder and CEO, along with its Senior Vice President, not only are credited as working on the 12-inch Remixes, but proudly admit doing so. | 151.   SOF ¶¶ 56, 58, 66, 68, 72. |
| 152.   Shimkin explained at his deposition, "I often took part in programming or the recording process, the mixing process." | 152.   SOF ¶ 59. |
| 153.   When asked whether it would be fair to say that Shimkin was *not* a writer or involved in the production or creation of "Vogue," Shimkin replied, "No." | 153.   SOF ¶ 60. |
| 154.   Instead, Shimkin went on to insist, "I was together with [Pettibone] in the writing of ["Vogue,"] so to speak, in the production of ["Vogue,"] the recording of ["Vogue,"] and directing of programmers and engineers." | 154.   SOF ¶ 61. |
| 155.   Shimkin further insisted that Pettibone "included [him] very much so in every respect of the process." | 155.   SOF ¶ 62. |
| 156.   With respect to the 12-inch Remixes, Shimkin testified that he would "often **sample vocal** phrases from within the songs, "so when we created extended versions, I would then play these vocal samples in a rhythmic manner for certain portions of the extended remix, in the dub and in other versions." | 156.   SOF ¶ 63. |
| 157.   Shimkin would also "act as engineer in creating some of the elements of arrangements of the mix, so to speak, muting certain sections, adding delay; creative things that you would do in the process of mixing a record, and edit the final product." | 157.   SOF ¶ 64. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

|  |  |
|---|---|
| 158. Shimkin specifically acknowledged the "Vogue (12" version)," and "Vogue (Bette Davis Dub)," and "maybe another dub," as remixes that he personally worked on. | 158. SOF ¶ 65. |
| 159. As far as Frasca is concerned, he was an engineer on "Vogue," and credited as such on each of the 12-inch Remixes. | 159. SOF ¶¶ 66-69. |
| 160. Frasca admitted working on any version of "Vogue" on which Pettibone worked, and is one of the people who is specifically credited on the jacket of the 12-inch Remixes as being the creators of those remixes. | 160. SOF ¶¶ 66-69, 72. |
| 161. Plaintiff brings this action for copyright infringement with unclean hands, and it must be dismissed. | 161. *Tempo Music*, 407 F.2d at 507. |

### F. Plaintiff's Claims Regarding the "Vogue (Shep's on the Fly)" and "Vogue (The Shep Pettibone Integral Mix)" Remixes Should be Dismissed

| Conclusions of Law | Authority |
|---|---|
| 162. Pettibone was not involved in the creation of "Vogue (Shep's On the Fly)" and "Vogue (The Shep Pettibone Integral Mix)"and Plaintiff has no proof to the contrary. | 162. SOF ¶¶ 78, 80-82. |
| 163. Frasca admitted that it was possible none of the Defendants had anything to do with the creation of these remixes and that they were potentially created by unauthorized third parties. | 163. SOF ¶ 80. |
| 164. Frasca further admitted that he had no evidence regarding whether these | 164. SOF ¶ 81. |

| | |
|---|---|
| remixes were ever played on the radio or otherwise exploited by any of the Defendants, or whether they generated any income. | |
| 165.   There is no evidence in this record that these remixes were created by Pettibone, and no evidence that they have ever been exploited, sold, or otherwise distributed by any of the Defendants. | 165.   SOF ¶¶ 78-82. |

**G. The Alleged Copied Horn Hit or Stab in the Original Version of "Vogue" and the Alleged Copied Vocals, Congas, and Percussion in the "Vogue" 12-inch Remixes Are Not Subject to Copyright Protection**

| Conclusions of Law | Authority |
|---|---|
| 166.   "The protectability of elements of a copyrighted work is a question of law for the court." | 166.   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-54 (C.D. Cal. 2002) (citing *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348–51, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)). |
| 167.   Not every element of a song is *per se* protected. | 167.   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-54 (C.D. Cal. 2002) (citing *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992)). |
| 168.   "Copyright protection extends only to those components of the work that are original and non-trivial." | 168.   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-54 (C.D. Cal. 2002) (citing *Feist,* 499 U.S. at 348–51). |
| 169.   "In assessing originality, courts must be 'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear | 169.   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-54 (C.D. Cal. 2002) (quoting *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir.1988)). |

| | |
|---|---|
| in various compositions, especially in popular music.'" | |
| 170.   The core claim at the heart of this Complaint is that a single chord horn sound from an obscure instrumental version of "Love Break," not released until two (2) years *after* the release of "Vogue," appears in "Vogue." | 170.   SOF ¶ 18, 27-28, 94. |
| 171.   The term "horn hit" or "horn stab" is often used to refer to this kind of short, percussive use of a chord, an effect commonly used in the Philly sound, in funk, in up-tempo soul, and in disco. | 171.   SOF ¶ 95. |
| 172.   It is undisputed the alleged copied horn hits in "Vogue" consist of a single chord, or stab, and a chord, or stab, sounded twice. | 172.   SOF ¶¶ 26, 29, 50, 95. |
| 173.   "A single chord is 'too small a unit to attract copyright protection.'" | 173.   Dkt. No. 29 at ¶ 5 ((quoting *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004)). |
| 174.   Even a "three-note sequence (C—D-flat—C) with one background note (C), segregated from the entire piece, cannot be protected, as it is not original as a matter of law." | 174.   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253-54 (C.D. Cal. 2002); *See also Poindexter v. EMI Record Grp. Inc.*, 11 CIV. 559 LTS JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) (single pickup note played on a piano that sounds for about two seconds and repeated on a loop is not subject to copyright protection); *McDonald v. Multimedia Entertainment, Inc.*, No. 90 Civ. 6356(KC), 1991 WL 311921, at *4 (S.D.N.Y. July 19, 1991) ("it is extremely doubtful that |

| | |
|---|---|
| | [a] single note and its placement in the composition is copyrightable"). |
| 175.   Here, the alleged copied portion of "Love Break" is even *less* than a three note sequence and consists of only a <u>single</u> chord or "hit." | 175.   SOF ¶¶ 25-26, 50. |
| 176.   The alleged copied horn "hit" is not original and too trivial to warrant copyright protection and, therefore, Plaintiff's copyright infringement claim fails as a matter of law. | 176.   *Poindexter v. EMI Record Grp. Inc.*, 11 CIV. 559 LTS JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) (single pickup note played on a piano that sounds for about two seconds and repeated on a loop is not subject to copyright protection); *McDonald v. Multimedia Entertainment, Inc.,* No. 90 Civ. 6356(KC), 1991 WL 311921, at *4 (S.D.N.Y. July 19, 1991) ("it is extremely doubtful that [a] single note and its placement in the composition is copyrightable"). |
| 177.   The horn hits are not original as similar horn hits were frequently used in prior works that pre-date "Chicago Bus Stop" and "Love Break." Examples of recordings with such similar horn "hits" are:  "Love is the Message" (1972), "T.S.O.P" (1974), "Ferry Avenue" (1975), "Get Down with the Philly Sound" (1975), etc. | 177.   SOF ¶¶ 1-4. |
| 178.   Many of these recordings were created by the same group, MFSB, that recorded "Chicago Bus Stop" when they later performed under the name Salsoul Orchestra. | 178.   SOF ¶¶ 4, 9. |
| 179.   Shimkin himself, at his deposition, testified that the horns in "Love is the | 179.   SOF ¶ 7. |

| | |
|---|---|
| Message" sound identical to those in "Love Break," and in "Vogue." | |
| 180. The horn sound in Love Is The Message appears at 5:56-5:58, and in "Love Break" at 3:36-3:40. | 180. SOF ¶ 108 |
| 181. The conga pattern heard on the 12-inch Remixes is the most prevalent pattern on conga, played for mambos, sones, guarachas, generally in salsa pieces, and also widely used in rock and jazz. | 181. SOF ¶ 75. |
| 182. The exact conga part can be heard in many Latin songs, including Willie Colón and Ruben Blades' "Siembra" (1978) or Típica '73's "Manono" (1972). | 182. SOF ¶ 75. |
| 183. The *sound effect* of a vibraslap or cymbal is also not subject to copyright protection. | 183. *Poindexter v. EMI Record Grp. Inc.*, 11 CIV. 559 LTS JLC, 2012 WL 1027639; *McDonald v. Multimedia Entertainment, Inc.,* No. 90 Civ. 6356(KC), 1991 WL 311921, at *4. |

**H. Plaintiff Concedes the Alleged Copying, Which Pettibone Denies, Cannot be Heard by the Ordinary Observer, Meaning the Two Works are not Substantially Similar**

| Conclusions of Law | Authority |
|---|---|
| 184. In its Complaint, Plaintiff alleges that the horn sample from "Love Break" in "Vogue" is purposefully "hidden" and "disguised," and, as a result not only cannot be heard by the ordinary observer, but was impossible to detect until supposedly new technology was invented in 2011. | 184. SOF ¶ 96. |
| 185. Plaintiff is now judicially estopped | 185. *Baughman v. Walt Disney World* |

| | |
|---|---|
| from taking a position that differs from those allegations. | *Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779-80 (9th Cir. 2009); *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,* 139 F.3d 1234, 1239 (9th Cir. 1998) (judicial estoppel applies to same litigation); *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir. 1993). *See also Bistro Executive, Inc. v. Rewards Network, Inc.*, CV 04-4640 CBM MCX, 2006 WL 6849825, at *5 (C.D. Cal. July 19, 2006); *Roderick v. Mazzetti & Associates, Inc.*, C 04-2436 MHP, 2006 WL 1883328, at *5 (N.D. Cal. July 7, 2006); *O'Brien v. City of Tacoma*, C04-5458FDB, 2005 WL 2045882, at *2 (W.D. Wash. Aug. 24, 2005). |
| 186.   The law in this Circuit is clear: even where actual copying is conceded, if an ordinary observer would not detect the similarity as coming from the original copyrighted source, the similarity is not substantial, and no legally actionable infringement has occurred. | 186.   *Newton*, 388 F.3d at 1192-93 (citing *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) (even if copying is established, no legal consequence attaches if ordinary observer would not recognize the appropriation); *see also* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B], at 13-8, 13-9 ("First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material […] If the answer is "yes," then one can conclude, *as a factual proposition*, that copying may have occurred. But the question remains whether such copying is actionable. In other words, *that first answer does not vouchsafe resolution of the legal* |

| | |
|---|---|
| | *question whether such copying as took place gives rise to liability for infringement*"); *Williams v. Kaag Mfrs., Inc.*, 338 F.2d 949 (9th Cir. 1964) (applying the ordinary observer test to determine substantial similarity), *accord* Nimmer, § 13.03[E], at 13-92, 13-94 (discussing ordinary observer test to determine substantial similarity); *Id.* § 13.03[A], at 13-30.2. |
| 187.   In addition, as discussed fully above, the single chord horn hit in "Vogue," and the conga and percussion in the 12-inch Remixes, are not only not original or copyrightable, but exist in numerous recordings and musical compositions that pre-date "Love Break." | 187.   SOF ¶¶ 1-4, 75. |
| 188.   As a result, the ordinary observer test also fails because the ordinary observer would not recognize the appropriation as originating with the allegedly infringed work, "Love Break," as is required to set forth a cognizable infringement claim. | 188.   *McIntosh v. N. California Universal Enterprises Co.*, 670 F. Supp. 2d 1069, 1087 (E.D. Cal. 2009) ("The test of infringement is whether the work is recognized by an ordinary observer as having been taken from the copyrighted source.") (quoting *Bradbury v. Columbia Broad. Sys., Inc.*, 287 F.2d 478, 485 (9th Cir. 1961)). |

## I.  Plaintiff's Infringement Claims Also Must be Dismissed as *De Minimis*

| Conclusions of Law | Authority |
|---|---|
| 189.   "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." | 189.   *Newton*, 388 F.3d at 1192-1193 (citing *Ringgold v. Black Entm't TV*, 126 F.3d 70, 74-75 (2d Cir. 1997)). |
| 190.   "The principle that trivial copying | 190.   *Newton*, 388 F.3d at 1193 |

| | |
|---|---|
| does not constitute actionable infringement has long been a part of copyright law. Indeed, as Judge Learned Hand observed over eighty years ago: 'Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent.'" | (quoting *West Publ'g Co. v. Edward Thompson Co.*, 169 F. 833, 861 (E.D.N.Y. 1909)). |
| 191.   This principle reflects the legal maxim, *de minimis non curat lex* (often rendered as, "the law does not concern itself with trifles"). | 191.   *Newton*, 388 F.3d at 1193 (citing *Ringgold*, 126 F.3d at 74-75). |
| 192.   The Ninth Circuit in *Newton* explained the correlation between the *de minimis* maxim and the general test for substantial similarity, noting that <u>for both</u>, the court looks to the response of the average audience, or ordinary observer, to determine whether a use is infringing. | 192.   *Newton*, 388 F.3d at 1193. |
| 193.   As the *Newton* court stated: "A leading case on *de minimis* infringement in [the Ninth] circuit is *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986), where we observed that a use is *de minimis* only if the average audience would not recognize the appropriation." | 193.   *Newton*, 388 F.3d at 1193. |
| 194.   "This observation reflects the relationship between the *de minimis* maxim and the general test for substantial similarity, which also looks to the response of the average | 194.   *Newton*, 388 F.3d at 1193 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| audience, or ordinary observer, to determine whether a use is infringing." | |
| 195.   "To say that a use is *de minimis* because no audience would recognize the appropriation is thus to say that the use is not sufficiently significant." | 195.   *Newton*, 388 F.3d at 1193. |
| 196.   In addition, copying is *de minimis* if the portion copied is neither qualitatively nor quantitatively significant in relation to the plaintiff's work as a whole. | 196.   *Newton*, 388 F.3d at 1195 (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n. 1 (9th Cir.1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the plaintiff's work was appropriated—not whether a substantial portion of defendant's work was derived from plaintiff's work."). |
| 197.   In *Newton*, the Court held that no reasonable juror could find the sampled portion of the composition to be a quantitatively or qualitatively significant portion of the composition as a whole.  The Ninth Circuit noted that the segment lasted only "six seconds" of the plaintiff's work, and was roughly two percent of the four-and-a-half-minute "Choir" sound recording. Qualitatively, the section of the composition was no more significant than any other section. | 197.   *Newton*, 388 F.3d at 1195-96. |
| 198.   In this case, the single chord horn sound in "Love Break" has a duration of approximately .23 seconds (or less than a quarter of a second). While standing alone or in a pattern of two hits, this chord makes multiple | 198.   SOF ¶¶ 26, 29. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| appearances in the original "Love Break," the cumulative duration is only 16 seconds out of more than seven minutes of recorded music. | |
| 199.   In the instrumental version, it appears only for 11.5 seconds total. | 199.   SOF ¶ 27. |
| 200.   The chord is also not sounded for the first 4:39 (after more than half the recording has elapsed) in the original "Love Break", and not until 3:11 seconds have elapsed in the instrumental version, before which in both versions all of the most important material in the recording has been introduced. | 200.   SOF ¶ 28. |
| 201.   The vocals and congas are not even present in the original "Love Break," or the instrumental version, but appear only in the remix titled "Ooh I Love It (Original Shep Pettibone 12" Remix). | 201.   SOF ¶ 31. |
| 202.   The congas appear only for 50 seconds in the beginning of the 12-inch Remixes and appear only once more towards the end of the recording for 39 seconds, totaling just 1 minute and 29 seconds out of 7 minute and 25 second recording. | 202.   SOF ¶ 32. |
| 203.   With respect to the alleged use of the words "Love Break," the utterance *does not* appear in the commercially released "Love Break", but only appears in a 12 inch remix of "Love Break," created by Pettibone, for 18.97 seconds of a 7:25 second song. | 203.   SOF ¶ 33. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

| | |
|---|---|
| 204.   It of course, does not appear at all in "Vogue," but only for short periods of time in 12 inch post production remixes that Frasca and Shimkin co-created. | 204.   SOF ¶ 34. |

### J.  In the Alternative, Plaintiff's Copyright Infringement Claim Should be Limited to the Statutory Three Year Period

| Conclusions of Law | Authority |
|---|---|
| 205.   Where a plaintiff files a copyright claim more than three years after it discovered or should have discovered infringement, a plaintiff's right to damages is limited to those suffered during the three years prior to filing the suit. | 205.   Dkt. No. 29 at ¶ 5 (citing *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 705-06 (9th Cir. 2004). |
| 206.   "Courts typically do not allow plaintiffs to preserve an untimely claim through the delayed discovery rule when the material at issue has been widely disseminated through mass media publication." | 206.   *Benjamin v. Walt Disney Co.*, CV 05-2280GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007) (Court rejected plaintiff's claim that defendant concealed its infringement when the work was released nationwide and run on network television in advance of release). |
| 207.   "Vogue" is an iconic song recognized as one of the best dance songs of the nineties, and like the work in *Benjamin v. Walt Disney*, has been widely disseminated through various forms of mass media. | 207.   SOF ¶ 53. |
| 208.   Several years prior to Verse's acquisition of Salsoul in 2010, Salsoul investigated whether "Vogue" might contain a sample of the "Love Break" | 208.   SOF ¶¶ 83-84, 89-92. |

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| sound recording and decided not to pursue it. This was communicated to Frasca during the due diligence process of the Verse acquisition of Salsoul. | |
| 209.   Plaintiff also cannot provide <u>any</u> evidence to support its contention that nobody was able to "confirm" the alleged sampling until certain technology was available to it in 2011. | 209.   SOF ¶ 100. |
| 210.   Plaintiff admits that the purported technology used was a "wave analysis done by its expert," and also acknowledges that sound wave analysis has been around for decades. | 210.   SOF ¶¶ 97-98. |
| 211.   Frasca and Shimkin also now admit the sampling was obvious, and not hidden, and would be recognizable to an ordinary observer. They also now claim that the words "Love Break" are actually included in the 12-inch Remixes of "Vogue." | 211.   SOF ¶¶ 73, 101. |
| 212.   Plaintiff's allegation about the alleged sample being hidden, and disguised, and unable to be detected, was a knowingly false allegation when made in the Complaint. | 212.   SOF ¶¶ 97-98. |
| 213.   in a case of continuing copyright infringements, an action may be brought only for those acts that accrued within the three years preceding the filing of the suit | 213.   *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-482 (9th Cir. 1994). |

DATED:  May 6, 2013                          Respectfully submitted,

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT

1

2                             PAUL H. DUVALL

3                             KING & BALLOW

4

5                             By: _____/s/Paul H. Duvall_____
                                      PAUL H. DUVALL

6

7                             Attorney for Defendant Shep Pettibone
                             and Lexor Music, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SHEP PETTIBONE AND LEXOR MUSIC, INC.'S SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY
JUDGMENT