LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

## ORDER RE

> **1. Ms. Ciccone, WB Music Corporation, and WEBO Girl Publishing Inc.'s Motion for Summary Judgment [45]**
> **2. Lexor Music Inc. And Shep Pettibone's Amended Motion for Summary Judgment [46][67]**
> **3. Warner Music Group and Warner Bros. Records Inc.'s Joinder in Motion for Summary Judgment [105]**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Madonna Louise Ciccone, WB Music Corporation and WEBO Girl Publishing, Inc. (Dkt. No. 45); an Amended Motion for Summary Judgment filed by Defendants Lexor Music Inc. and Shep Pettibone (Dkt. Nos. 46, 67); and a Joinder in Defendant Lexor Music Inc. and Shep Pettibone's Motion for Summary Judgment, or in the Alternative Partial Summary Judgment filed by Warner Music Group and Warner Bros. Records Inc. (Dkt. No. 105.) While there are disputed factual issues in this case, those issues are not material to the Court's decision.

In short, Plaintiff alleges copyright infringement for the appropriation of a single horn stab ("Horn Hit") from Plaintiff's work, *Love Break*. The Horn Hit is a single chord that is played eleven times in Defendants' work, *Vogue*. [1]  The Court finds neither the

---

[1]The Complaint and the FAC allege that the "horns and strings" were infringed. In its Opposition, Plaintiff streamlines the claim to allege copyright infringement of only the Horn Hit used throughout *Love Break* in the commercial version of *Vogue*. (Dkt. No. 111 at 6.) Plaintiff's expert opines that the Horn Hit in *Vogue* could only have been sampled from *Love Break*. (Dkt. No. 107-1, Stewart Op. ¶ 30).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

chord nor the Horn Hit sound sufficiently original to merit copyright protection. Even if the alleged appropriation was subject to copyright protection, the Court finds that any copying was *de minimis*. For the following reasons, Defendants' Motions for Summary Judgment are **GRANTED**.

## I.  BACKGROUND

### A. The Parties

Plaintiff VMG Salsoul ("Plaintiff" or "VMG") is a limited liability company. (Dkt. No. 67-9 at 2.) Verse Music Group ("Verse") owns VMG. Verse was founded in part by Curt Frasca ("Mr. Frasca"), Plaintiff's Chief Executive Officer ("CEO"). (Dkt. No. 76, Frasca Decl. ¶ 1.) The former Vice President of Verse is Tony Shimkin ("Mr. Shimkin"). (Dk. No. 67-9 at 2.)

Defendant Shep Pettibone ("Mr. Pettibone") wrote and produced the musical composition and sound recording that embodied Madonna Louise Ciccone's ("Ms. Ciccone") performance of *Vogue*. (Dkt. No. 67-9 at 3.)

The remaining Defendants are: Defendant Warner Music Group, which administers the *Vogue* sound recordings; Defendant Warner Bros. Records Inc., which also administers the *Vogue* sound recordings; Defendant WB Music Corporation, which owns and administers the *Vogue* musical composition; Defendant Blue Disque Music Company Inc., which is currently non-existent; WEBO Girl Publishing Inc., which is Ms. Ciccone's music publishing company; and Lexor Music Inc., which is Mr. Pettibone's music publishing company (collectively "Defendants"). (Dkt. No. 67-9 at 3.)

### B. The Creation of *Love Break*

In 1982 or 1983, Plaintiff's predecessor hired Mr. Pettibone to create remixes using old master tracks from the Salsoul Record label. (Dkt. No. 72 at 18.)  For one particular project, Mr. Pettibone remixed *Chicago Bus Stop* to create *Love Break*. (Dkt. No. 72 at 18.) According to Plaintiff, Mr. Pettibone was hired under a work for hire agreement, which would deprive him of ownership rights in the work. (Dkt. No. 72 at 9.)

LINK:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## C. The Creation of *Vogue*

Plaintiff's CEO, Mr. Frasca, and former Vice President, Mr. Shimkin were involved in the creation of *Vogue* and the *Vogue* club remixes. Mr. Frasca worked as an assistant engineer on the original *Vogue*. (Dkt. No. 67-8, SOF ¶ 85.) He also worked alongside Mr. Shimkin and Mr. Pettibone as an assistant engineer on the *Vogue* post production remixes. (Dkt. No. 67-8, SOF ¶ 85.) According to Mr. Frasca, he "had no authority over the creative process of *Vogue* or any other recording for which [he] provided [his] services as an assistant engineer." (Dkt. No. 76, Frasca Decl. ¶ 8.) Mr. Frasca's role as an assistant engineer required him to "set up gear, assist the session engineer, align multi-track machines, change the reels of tape, patch in outboard gear as requested, set up outboard gear, keyboards, samplers, turntables, take session notes, order food, break down and clean session." (Dkt. No. 76, Frasca Decl. ¶ 6.)

Though not credited on *Vogue*, Mr. Shimkin was indirectly involved in the writing of the original *Vogue*.[2] (Dkt. No. 73, Shimkin Depo. 27:21-28:14.) Mr. Shimkin testified he was "together with [Mr. Pettibone] in the writing of [*Vogue*], so to speak, in the production of [*Vogue*], the recording of [*Vogue*] and directing of programmers and engineers." (Dkt. No. 73, Shimkin Depo. 24:20-25:2.) Both Mr. Frasca and Mr. Shimkin received credit for the club remixes. (Dkt. No. 67-8, SOF ¶ 85.).

---

[2] Q: Other than being a sounding board for [Mr. Pettibone] and asking your opinion, were you involved, yes or no, in the writing or creation of the original song *Vogue*, not the remixes that came after, the original song *Vogue*?

A. Yeah, indirectly, yes, I would say yes, indirectly.

Q. What do you mean by "indirectly"?

A. I didn't play the parts myself, and neither did [Mr. Pettibone]. We had programmers who were hired to do that, and keyboard players who were hired to do that. But we would direct them, so I believe I would direct them sometimes and give them advice on what they played and say, that was good, or it should be this or it should be that, so I think there were creative decisions I made. (Dkt. No. 73, Shimkin Depo. 27:21-28:14.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

#### D. The Acquisition of the Salsoul Catalog

Mr. Frasca convinced Plaintiff's private equity group to acquire the copyrights to the Salsoul catalog, which contained compositions and sound recordings that had been released on the Salsoul Record label. (Dkt. No. 67-2, Frasca Depo. 70:18-25.) Though "[t]he decision to pursue the copyright claims was not solely [his] to make," Mr. Frasca informed the corporate board that there was potential to "make money off the purchase of the Salsoul catalog [by] going after sample claims." (Dkt. No. 67-2, Frasca Depo. 70:18-25.)

In February 2011, Plaintiff acquired the Salsoul catalog of copyrights from Bethlehem Music Co. Inc.  (Dkt. No. 76, Frasca Decl. ¶ 4.) This included the copyrights to the sound recordings and compositions of Vincent Montana's *Chicago Bus Stop (Ooh, I Love It)*, Copyright Registration Nos. EP 354406 and N27725. (Dkt. No. 96 ¶ 14; Dkt. No. 76, Frasca Decl. ¶ 5.)  Plaintiff contends that they also own all rights to the remix of *Chicago Bus Stop*, entitled *Ooh, I Love It (Love Break)* ("*Love Break*"). (Dkt. No. 96 ¶ 14; Dkt. No. 76, Frasca Decl. ¶ 5.) On the theory of derivative works, Plaintiff contends its Copyright Registration for the sound recording of *Chicago Bus Stop* extends to *Love Break*. (Dkt. No. 96 ¶ 15.)

#### E. The Dispute

Plaintiff alleges Mr. Pettibone sampled the Horn Hit from *Love Break*'s instrumental version. (Dkt. No. 75-1, Stewart Op. at 14.)  Plaintiff's expert, Dr. Alexander Stewart ("Dr. Stewart"), opines the Horn Hit was sampled at 3:35 and 3:39 of *Love Break*.[3] (Dkt. No. 75-1, Stewart Op. at 14.) Allegedly, the Horn Hit was

---

[3] Plaintiff's Opposition argues that the Horn Hit is derived from *Chicago Bus Stop*.  Plaintiff collectively refers to *Chicago Bus Stop* and *Love Break* as "*Love Break*," and argues the qualitative and quantitative importance of the Horn Hit to both works. (*See* Dkt. No. 111.) The Court will confine its discussion of the Horn Hit to the one played in *Love Break*'s instrumental version for two reasons. First, it is undisputed that Mr. Pettibone altered the Horn Hit in *Chicago Bus Stop* when he created *Love Break*. (Dkt. No. 75-1, Stewart Op. at 24.)  Second, Plaintiff's expert, Dr. Stewart, testified that the Horn Hit only could have been sampled from the instrumental version of *Love Break* (7:46). (Dkt. No. 67-6, Stewart Depo. 123:4-126:8; Dkt. No. 75-1, Stewart Op. at 14.)  Dr. Stewart admits there was no copying

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

appropriated without permission and utilized in the creation and production of *Vogue* in 1989. (Dkt. No. 75-1, Stewart Op. at 14.) Plaintiff has streamlined its claim to only allege copyright infringement of the Horn Hit used throughout *Love Break*. (Dkt. No. 111 at 7.) Initially, Plaintiff also alleged potential copyright infringement of the strings, conga rhythm, vibraslap and chant. Dr. Alexander also discusses these elements in his expert opinion. (*See* Dkt. No. 107-1, Stewart Op. at 34.)

Plaintiff alleges that the remaining defendants published, manufactured, distributed, sold and licensed copies of *Vogue*, as well as its remixes, extended and rearranged versions, incorporating substantial portions of *Love Break*. (Dkt. No. 96 ¶ 25.)

### F. Procedural History

On both July 18, 2011 and February 16, 2012, Plaintiff provided a Notice of Copyright Infringement to Ms. Ciccone, Mr. Pettibone, WB Music Corporation, Blue Disque Music Company Inc., WEBO Girl Publishing Inc., and Lexor Music Inc. (Dkt. No. 96 ¶ 23.) Despite the Notice, Defendants continued to use and sell the sound recording of *Vogue*. (Dkt. No. 96 ¶ 23.) Notably, Ms. Ciccone performed *Vogue* at the half-time show of the Super Bowl on February 5, 2012. (Dkt. No. 96 ¶ 22.) Plaintiff filed its Complaint against Defendants on July 11, 2012 alleging the deliberate and unauthorized use of its sound recording and composition copyrights of the song *Love Break*. (Dkt. No. 1.)

On September 6, 2012, Mr. Pettibone filed an answer on behalf of all Defendants. (Dkt. No. 10.) On October 9, 2012, Mr. Pettibone filed a motion to dismiss the Complaint on behalf of Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 18.) Defendants argued for dismissal of the Complaint for failure to state a claim. Defendants argued that the alleged copying, if any, was *de minimis*. (Dkt. No. 29 at 3-4.) Judge Stephen V. Wilson denied the motion to dismiss, reasoning that Defendants' objections would be more appropriately dealt with in a motion for summary

if Defendants did not have access to the instrumental version of *Love Break* or the underlying creation files. (Dkt. No. 67-6, Stewart Depo. at 123:4-126:8.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

Judgment.[4] (Dkt. No. 29.)

On May 6, 2013, Defendants Ms. Ciccone, WB Music Corporation, and WEBO Girl Publishing filed a Motion for Summary Judgment. (Dkt. No. 45.) On May 6, 2013, Defendant Pettibone and Lexor Music, Inc. filed a Motion for Summary Judgment. (Dkt. No. 46.)

On May 20, 2013 Plaintiff filed a Motion for Leave to Amend the Complaint. (Dkt.  No. 56.) On June 11, 2013, Defendant Pettibone and Defendant Lexor Music Inc. filed an Amended Motion for Summary Judgment. (Dkt. No. 67.) On June 13, 2013, Defendants Ms. Ciccone, WB Music Corporation, WEBO Girl Publishing Inc. filed a Joinder in the Amended Motion for Summary Judgment. (Dkt. No. 70.) On June 21, 2013, Plaintiff filed a Memorandum in Opposition to the Motion for Summary Judgment. (Dkt. No. 72.) On July 11, 2013, the Court granted Plaintiff Leave to Amend. (Dkt. No. 95.) On July 12, 2013, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. No. 96.) On July 12, 2013, Plaintiff filed the FAC, adding Warner Music Group and Warner Music Records Inc. as Defendants. (*See* Dkt. No. 96.)  On August 5, 2013, Defendants Warner Music Group and Warner Bros. Records Inc. filed a Motion for Joinder in the Amended Motion for Summary Judgment filed by Mr. Pettibone and Lexor Music Inc. (Dkt. No. 105.)

## II. LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.*  A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file.  Fed. R. Civ. P. 56(c)(2).  Where the moving party's version of

---

[4] According to Judge Wilson, "Plaintiff's expert indicated that the sampled parts 'consist of a single chord,' or 'hit,' and a chord sounded twice, or double 'hit.' Thus, at its core, Plaintiff's allegation of copyright infringement centers on a *single* chord." (Dkt. No. 29 at 5 n.4.) Plaintiff had reduced their original claims from horns, strings, and percussion to focus only on the horns.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to specifically identify the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | | Date | November 18, 2013 |
|----------|------------------------|--|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | | |

## III. EVIDENTIARY OBJECTIONS

As a preliminary matter, the Court will discuss the Parties' evidentiary objections. Mr. Pettibone and Lexor object to the declaration of Ken Cayre ("Mr. Cayre") submitted in Opposition to the Motion for Summary Judgment. (Dkt. No. 77-3.) According to Defendants, Plaintiff purposefully did not disclose Mr. Cayre as a witness, in violation of Rule 26 of the Federal Rules of Civil Procedure. (Dkt. No. 77-3 at 1.) Plaintiff's Rule 30(b)(6) witness, James Drake, testified that Plaintiff had absolutely no evidence or knowledge of when the instrumental version of *Love Break* was released. (Dkt. No. 77-2, SSOF ¶ 12.) This information has subsequently been offered by Mr. Cayre's declaration. Defendants argue Mr. Cayre was in communication with Plaintiff at the time of the 30(b)(6) deposition, but Plaintiff chose not to disclose this information. (Dkt. No. 77-3 at 1.) Defendants claim prejudice and seek preclusion of Mr. Cayre's declaration. (Dkt. 77-3.) Evidence preclusion is appropriate for failure to comply with disclosure requirements unless the nondisclosure is "substantially justified" or harmless. Fed.R.Civ.P 37(c)(1).

Mr. Cayre states "[b]oth the composition and the sound recording were duly registered with the United States Copyright Office." Much of what he testifies regards the circumstances of the recording for *Chicago Bus Stop*, and the pay and employment arrangement with Mr. Pettibone when he created *Love Break*. As detailed below, the Court finds that the chord is unoriginal, and is too *de minimis* to make Mr. Pettibone liable for copyright infringement. Thus, the declaration is not relevant. Therefore in the context of this motion, Mr. Cayre's declaration is harmless.

Plaintiff objects to the expert reports of Dr. Jason King (Dkt. No. 67-4), Dr. Gage Averill ("Dr. Averill") (Dkt. No. 67-4), and Paul Geluso ("Mr. Geluso") (Dkt. No. 67-6), arguing they are inadmissible for lack of signature "under penalty of perjury." (Dkt. No. 77-3.) The Court overrules those objections. Expert reports submitted pursuant to Rule 26 constitute proper evidence to support a motion for summary judgment.

Plaintiff also objects to the admission of printouts from the Internet ("Internet Articles"). The Court did not rely on the documents challenged in making this decision. However, the Court notes that the Internet Articles have been properly authenticated by Paul Duvall. It is therefore unnecessary to discuss their admissibility. (*See* Dkt. No. 67-1

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

¶¶ 13, 25.) Plaintiff makes other objections to portions of declarations that it states constitute improper legal argument. (*See* Dkts. No. 76-1, 108.) The Court has not relied upon these bare legal assertions in rendering its decision. Therefore it is unnecessary to discuss their admissibility.

## IV. DISCUSSION

In order to prove copyright infringement, Plaintiff must demonstrate the "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendant seeks summary judgment on Plaintiff's sole count of copyright infringement for the appropriation of *Love Break*'s Horn Hit in both the musical composition and sound recording of *Vogue*. The Court finds that the alleged appropriation is not subject to copyright protection as it lacks originality. Even if copyrightable, the alleged copying is *de minimis*.

### A. Ownership of a Copyright

Plaintiff presents a Copyright Registration for *Chicago Bus Stop*, which creates a rebuttable "presumption of validity." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). Defendants and Plaintiff disagree about whether Mr. Pettibone has an ownership interest in *Love Break*, the remix of *Chicago Bus Stop*. Ownership would render claims against Mr. Pettibone for copyright infringement futile. It is unnecessary to engage in a discussion of whether *Love Break* is a derivative work of *Chicago Bus Stop*,[5] or whether Mr. Pettibone has an ownership interest in *Love*

---

[5] According to Plaintiff, *Love Break* is a derivative work of *Chicago Bus Stop*. Plaintiff submitted a "chain of title" to the sound recording of *Chicago Bus Stop*. Plaintiff argues that utilizing the Horn Hit from *Love Break* is essentially using the Horn Hit from *Chicago Bus Stop*. Pursuant to the Copyright Act, 17 U.S.C. § 101, the right to create and sell derivative works is an exclusive right reserved to the copyright owner. 17 U.S.C. § 101 (2010). "The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work." *Stewart v. Abend*, 495 U.S. 207, 223 (1990). Therefore, Plaintiff argues that the use of the Horn Hit from *Love Break* requires permission from the Copyright Owner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

*Break*.[6] The Court finds the Horn Hit is not sufficiently original to be a copyrightable element of the works.

While a valid certificate of registration with the copyright office entitles Plaintiff to a presumption of originality, Defendants may overcome this presumption by demonstrating that the Horn Hit is not original. *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004). "[N]ot every element of a song is *per se* protected." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002) *aff'd*, 349 F.3d 591 (9th Cir. 2003) *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) and *aff'd*, 388 F.3d 1189 (9th Cir. 2004). Copyright protection extends only to those components of the work that are original and non-trivial. *Feist*, 499 U.S. at 348–51. The Ninth Circuit has instructed courts assessing the originality of musical elements to be "'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Newton*, 204 F. Supp. 2d at 1253 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir.1988)).

## 1.  Lack of Originality

The Horn Hit is not sufficiently original to merit copyright protection. Originality is a question of law. *See Newton*, 204 F. Supp. 2d at 1253-54.  "Many courts have found that nearly identical or more substantial samples are not susceptible to copyright protection." *Id*. at 1253; *see Jean v. Bug Music, Inc.*, No. 00 Civ 4022(DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) (holding that an excerpt of a song could not be protected by plaintiff's copyright "because the sequence of the three notes and the lyrics lack the requisite originality").

---

[6] Defendants argue that Mr. Pettibone could not be liable for copyright infringement because he gained an ownership interest in *Love Break* when he mixed the recording for Salsoul Records. Mr. Pettibone testified that he added musical elements to *Chicago Bus Stop* when he created *Love Break*, including background singers, an organ, bass, and percussion instruments. (Dkt. No. 77-21, Pettibone Depo. 17:1-18:6.) This raises the question of whether Mr. Pettibone has ownership over aspects of *Love Break*. Plaintiff's expert, Dr. Stewart, agrees that Mr. Pettibone made alterations to the Horn Hit from *Chicago Bus Stop*. Mr. Pettibone took the Horn Hit from *Chicago Bus Stop* and removed the baritone saxophone before using them in *Love Break*. (Dkt. No. 75-1, Stewart Op. at 23.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

Plaintiff rests on Professor Nimmer's interpretation of *Swirsky*, arguing the Court is precluded from granting Defendants' Motions for Summary Judgment. According to Plaintiff, *Swirsky* stands for the proposition that "any plaintiff who can retain a testifying expert [in a music copyright infringement case] will avoid an adverse summary judgment." (Dkt. No. 72 at 12); *See* 4-13 Nimmer on Copyright § 13.03, n. 264.90 (citing to *Swirsky*, 376 F.3d at 843). The Court does not agree. In *Newton*, Plaintiff similarly attempted to create a triable issue by submitting portions of an expert opinion. 204 F. Supp. 2d at 1256. The Ninth Circuit affirmed the district court's decision to grant summary judgment despite conflicting expert opinions. *See Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004). In *Newton*, plaintiff's expert did not provide relevant quantitative and qualitative analysis to produce a triable issue. Similarly, in this case, Plaintiff's expert opinion falls short on its qualitative and quantitative analysis. Plaintiff cannot create a triable issue of fact simply by submitting an expert opinion.

The Court finds that the Horn Hit, as a component of the musical composition and the sound recording, is not sufficiently original to merit copyright protection.[7]

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[7] Plaintiff does not distinguish between the musical composition and sound recording.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

### i.   Musical Composition





### a.   Example 1: Dr. Alexander Stewart's Transcription of Horn Hit

"A musical composition captures an artist's music in written form." *Newton*, 204 F. Supp. 2d at 1249. An analysis of originality takes into account a work's melody, harmony and rhythm. *Id.* "The proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, constituent elements of the work that

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

are original, such that the copying rises to the level of an unlawful appropriation." *Jarvis v. A & M Records*, 827 F. Supp. 282, 291 (D.N.J. 1993) (internal citation and quotation marks omitted); *see Feist*, 499 U.S. at 340.

First, it should be noted that the Horn Hit does not appear in the printed sheet music for *Vogue*. (Dkt. No. 107-1, Stewart Op. at 31.) Plaintiff's expert, Dr. Stewart argues that this should not diminish the Horn Hit's qualitative and quantitative importance to *Vogue*. To conduct his analysis, Dr. Stewart transcribed and compared the Horn Hit from *Love Break* and *Vogue* side by side as depicted in Exhibit 1. The two songs were recorded in different keys. To provide a better comparison, Dr. Stewart raised the pitch of *Vogue* by the "smallest tonal unit- one half-step." (Dkt. No. 75-1, Stewart Op. at 11.) The transcription appears over four measures. The top measures depict the single Horn Hit, and the bottom measures depict the double Horn Hit. Upon examination of Dr. Stewart's transcription, it is apparent that the alleged appropriation is too small to constitute a copyrightable element. Plaintiff's expert concedes that the Horn Hit transcribed in the four measures is the same single chord repeated in a single or double pattern. The chord consists of four notes. (Dkt. No. 77-11, Stewart Depo. 116:23-118:18.) Easily arrived at phrases and chord progressions are usually non-copyrightable. *Jarvis*, 827 F. Supp. at 291; *see also Newton*, 204 F. Supp. 2d at 1253 (C.D. Cal. 2002).

In *Newton*, the district court discussed cases in which sequences of less than six notes were qualitatively distinct enough to merit copyright protection. The *Newton* Court found that those cases involved: "1) sequences with accompanying lyrics; 2) sequences at the heart of the musical compositions; 3) sequences and lyrics that were repetitive; and/or 4) sequences that were based upon analyses of both the written composition and the sound recording." *Newton*, 204 F. Supp. 2d at 1254; *see, e.g.*, *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741, 744 (S.D.N.Y. 1980) (finding four notes and the phrase "I Love" at the heart of a copyrighted song may be distinctive). None of those circumstances are applicable to the case at hand. Plaintiff unsuccessfully analogizes this case to *Santrayll v. Burrell*, 91 CIV. 3166 (PKL), 1996 WL 134803 (S.D.N.Y. Mar. 25, 1996). In *Santrayll*, the court found the repetition of the non-protectable word "uh-oh," in a distinctive rhythm, comprised a sufficiently original composition to render it protectable by the copyright laws. *Id*. at *4. The Court finds *Santrayll* inapposite. The word "uh-oh" was repeated four times to a rhythm and was the "hook" of plaintiffs'

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

compositions. *Id.* at *2-3. The Court finds this case distinguishable. The Horn Hit is not a component of the "hook" in Plaintiff's *Love Break* nor is it accompanied by a lyric. As a result, the Court finds that this single chord is not sufficiently original to merit copyright protection.

Plaintiff contends that a single unprotectable element can merit copyright protection if there is a unique arrangement. According to Dr. Stewart, the call and response function of the single and double Horn Hit is preserved in *Vogue*, and "the two songs are almost exactly the same tempo, very little (if any) modification of the speed of passage was necessary." (Dkt. No. 75-1, Stewart Op. at 11.) Utilizing Dr. Stewart's opinion, however, it is apparent that *Vogue* does not mimic the same call and response pattern of the Horn Hits in *Love Break*. According to Dr. Stewart, in the *Vogue* compilation track, use of the Horn Hit proceeds as follows: single, double, double, double, double, and double.[8] (Dkt. No. 75-1, Stewart Op. at 16.) Similarly, in the *Vogue* radio edit, use of the Horn Hit proceeds as follows: single, double, double, double, and breakdown.[9] (Dkt. No. 75-1, Stewart Op. at 16.) Use of the Horn Hit before the alleged appropriation proceeds as follows: single, double, single, double, single, double, single (alleged sampled Horn Hit), double (alleged sampled Horn Hit).[10] (Dkt. No. 75-1, Stewart Op. at 14.) It is apparent that *Love Break* and in *Vogue* are distinct in their expressions of a call and response pattern, each using a unique mix of single and double Horn Hits.

---

[8] In the *Vogue* compilation track, a single Horn Hit can be heard at 1:14; a double Horn Hit can be heard at 1:20; a double Horn Hit can be heard at 3:59; a double Horn Hit can be heard at 4:24; a double Horn Hit can be heard at 4:40; and a final double Horn Hit can be heard at 4:57. (Dkt. No. 75-1, Stewart Op. at 16.)

[9] In the *Vogue* radio edit track a single Horn Hit can be heard at 0:56; a double Horn Hit can be heard at 1:02; a double Horn Hit can be heard at 3:41; a double Horn Hit can be heard at 4:05; and a breakdown of the Horn Hit can be heard at 4:18. (Dkt. No. 75-1, Stewart Op. at 16.)

[10] In the instrumental version of *Love Break,* the Horn Hit can be heard at the certain points in the song as follows: 3:11 single, 3:15 double, 3:19 single, 3:23 double, 3:27 single, 3:31 double, 3:35 single (alleged sampled Horn Hit), 3:39 double (alleged sampled Horn Hit), 3:42-4:06 similar figure (double and a single hit) 6x, 4:08 single, 4:12 single, 4:14 double, 4:16 single, 4:20 single, 4:22 double, 4:24 single, 4:28 single, 4:30 double, 4:32 single, 4:36 single, 4:38 double, 7:01 double, 7:04 single, 7:09 double, 7:13 single, 7:17-7:46 similar figure (a double and a single hit) 7x. (Dkt. No. 75-1, Stewart Op. at 14.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|----------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

The Court finds the overall concept of a call and response pattern to be a musical *idea* that in itself is not protectable. Different variations on the call and response pattern can be heard in other works. For example, Defendants' expert Dr. Averill points the Court to *Love is the Message* (1972), in which the horn parts are very similar to *Love Break*. (Dkt. No. 46-3, Averill Op. at 14.) Plaintiff's expert, Dr. Stewart agrees that there are "obvious similarities in the instrumentation of *Love Break* and *Love is the Message*." (Dkt. No. 107-1, Stewart Op. at 27.)  He opines that "these choices reflect musical *ideas*, not actual musical expression, and are not protectable under copyright." (Dkt. No. 107-1, Stewart Op. at 27.)  The Court agrees with respect to the call and response pattern in *Vogue* and *Love Break*. While there may be similarities in the artists' choice to implement a call and response pattern, this is only a musical idea. Ideas are not protectable. *See Funky Films*, 462 F.3d 1072, 1077 (9th Cir. 2006) (holding that ideas are not protectable, but expressions that include "specific details of an author's rendering of ideas" are protectable). The artists' expressions of a call and response pattern in *Vogue* and *Love Break* are distinct.

The Court finds the Horn Hit is not sufficiently unique to be a copyrighted element of the musical composition.

### i. Sound Recording

Similarly, the Court finds the Horn Hit is not sufficiently unique to be a copyrighted element of the sound recording. "The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition." *Newton*, 204 F. Supp. 2d at 1249-50. In essence, at issue here is a single stab, a sequence that "consists of only a single chord or 'hit,'" lasting for only a quarter second. (Dkt. No. 77-11, Stewart Depo. 116:23-118:18.) Mr. Pettibone's practice of using horns in a percussive manner "comparable to a 'hit' on the snare drum," is not unique. (Dkt. No. 46-3, Averill Op. at 14.) Playing horns in a percussive manner was a "continuous and coherent with practice . . . widespread in the Philly Sound, funk, soul, and disco." (Dkt. No. 46-3, Averill Op. at 14.) As Defendants point out, the single horn hit has been frequently used in prior works that predate *Chicago Bus Stop* and *Love Break*. (Dkt. No. 67-8, SOF ¶ 131.) Defendants' expert identifies additional works that use the percussive style of horns. Some were made by the Salsoul Orchestra, including *T.S.O.P.* (1974), *Ferry Avenue* (1975), *Get Down*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

*with the Philly Sound* (1975)." (Dkt. No. 67-8, SOF ¶ 131.) Defendants' expert highlights, *I'm On Your Side* (1976), as a track containing a horn sound particularly similar to the Horn Hit in *Love Break*. (Dkt. No. 46-3 at 15.) Artist James Brown also used this style of horns. They can be can be heard in *Papas Got a Brand New Bag* (1965), *Get Up Offa That Thing* (1976), and *Say it Loud* (1968). (Dkt. No. 67-1, Averill Op. at 11.)

Plaintiff's CEO, Mr. Frasca, admits that other recordings have used a horn to play this chord in works that predated *Love Break*.[11] (Dkt. No. 46-4, Frasca Depo. 100:8-24.) Additionally, Plaintiff's former Vice President Mr. Shimkin, identified the horn sound in *Vogue* to be the same horn sound that was utilized in *Love is the Message*. (Dkt. No. 46-5, Shimkin Depo. 121:21-123:17; 128:20-129:9; 149:24-150:5.) Plaintiff's expert agrees that there are obvious similarities between *Love Break* and *Love is the Message*. (Dkt. No. 107-1, Stewart Op. at 27.) Finally, Dr. Stewart does not refute the statement that playing horns in a percussive manner was a common practice. (Dkt. No. 107-1, Stewart Op. ¶ 28.) In his attempt to discredit Dr. Averill's expert opinion, Dr. Stewart states:

> Dr. Averill seems to be saying that the Plaintiff's infringement case rests on the *idea* of using horns in a percussive manner and as well as the harmonic content of the horn part. Nothing could be further from the truth. I am well aware that ideas are not protectable . . . because sampling, by its very definition, proves access and copying, the originality of the materials here is not at issue.

---

[11] A: Well, I guess if you are asking is that chord in other music, I would assume yes, because there's a limited amount of chords. Was there a horn played in a sound recording prior --

Q: To Love Break--

A: --to Love Break.

Q: --that has that same sound that's in *Vogue* as in *Love Break*?

A: Yes. Horns were played prior to *Love Break* in recordings, absolutely.

(Dkt. No. 46-4, Frasca Depo 100:8-24.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

(Dkt. No. 107-1, Stewart Op. ¶ 28.) Dr. Stewart provides a legal conclusion. The Court is only bound to view the facts in a light most favorable to Plaintiff. Taking into consideration the popularity of this style of horn playing, the Court finds the Horn Hit sound in *Love Break* is not sufficiently original to be a copyrighted element of the work.

## B. Copying

Even if the alleged appropriation was subject to copyright protection, the Court finds Defendants' use to be *de minimis*. Plaintiff argues that the Court should not engage in a substantial similarity analysis or a *de minimis* inquiry because this is a digital sampling case. The Court does not agree. Plaintiff cites to *Bridgeport Music, Inc. v. Dimension Films*, which reversed a district court's decision to grant summary judgment. 410 F.3d 792 (6th Cir. 2005). In *Bridgeport Music*, the Sixth Circuit held that "no substantial similarity or *de minimis* inquiry should be undertaken at all when the defendant has not disputed that it digitally sampled a copyrighted sound recording." *Id.* at 798. This case is not applicable for three reasons. First, the Sixth Circuit's bright-line rule has not been adopted by the Ninth Circuit. In *Newton*, the Ninth Circuit held that "[t]he practice of music sampling will often present cases where the degree of similarity is high . . . .Yet as Nimmer explains, '[if] the similarity is only as to nonessential matters, then a finding of no substantial similarity should result.'" *Newton*, 388 F.3d at 1195. Second, Defendants have not conceded copying. Mr. Pettibone contends he independently created the Horn Hit through the use of a "proteus emulator" for *Vogue*. (Dkt. No. 67-8, SOF ¶ 54.) Third, Plaintiff's experts Mark Rubel ("Mr. Rubel") and Dr. Stewart admit there is no scientific evidence of sampling of the Horn Hit (Dkt. No. 67-8, SOF ¶ 61.) Attempts to undo Mr. Pettibone's supposed manipulation of the Horn Hit in *Vogue* to match the Horn Hit in *Love Break* have been inconclusive. (Dkt. No. 67-8, SOF ¶ 61.)

The Court therefore will engage in a substantial similarity and *de minimis* inquiry.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

### 1. Access

There is rarely evidence of copying, but a plaintiff may establish copying with indirect evidence. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). To support an inference that copying took place, the Plaintiff must demonstrate "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.2002) (internal citation omitted). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir.2009) (internal citation omitted).

In the instant case, there is no dispute that Mr. Pettibone had access to the Horn Hit from *Chicago Bus Stop* when he created *Love Break*. There is a dispute, however, as to whether Mr. Pettibone had access to the Horn Hit from the instrumental version of *Love Break* when he created *Vogue*. Plaintiff's designated witness James Drake testified that Plaintiff had no evidence or knowledge of when the instrumental version of *Love Break* was released. (Dkt. No. 67-8, SOF ¶ 10.) Defendants only offer inadmissible evidence to show that the instrumental version of *Love Break* was released *after Vogue* was recorded. The Court finds it unnecessary to determine access because the issue of originality and substantial similarity are dispositive.

### 2. Substantial Similarity

Once ownership and access are demonstrated, courts must inquire whether the two works are "substantially similar." *Funky Films*, 462 F.3d at 1076. "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." *Newton*, 388 F.3d at 1192-93. Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole. *See, e.g.*, *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir.1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the *plaintiff's* work was appropriated—not whether a substantial portion of *defendant's* work was derived from plaintiff's work."). "[T]rivial copying does not constitute actionable infringement." *Newton*, 388 F.3d at 1193. "Even

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent." *Id*. (quoting *West Publ'g Co. v. Edward Thompson Co.*, 169 F. 833, 861 (E.D.N.Y.1909) (internal quotation marks and citation marks omitted).

### 3. *De Minimis* Copying

Plaintiff contends that the sampled portions are not *de minimis* because they play an important role in *Love Break*. Plaintiff argues the Horn Hits are the "central or prominent compositional elements" in *Chicago Bus* Stop; however, Plaintiff overstates Dr. Stewart's evaluation. (*See* Dkt. No. 111.) Dr. Stewart opines that "[t]he total time [the Horn Hits] are central or prominent compositional elements in [*Chicago Bus Stop*] is 88 seconds or nearly 31% of the 4:47 song." (Dkt. No. 75-1, Stewart Op. ¶ 23.) Dr. Stewart has opined that the Horn Hit is only compositionally prominent in 31% of the song, not the entire song. While Dr. Stewart determines that the Horn Hit is qualitatively and quantitatively important to *Chicago Bus Stop*, the Court finds this analysis inconclusive for the question at hand. Importantly, Dr. Stewart does not opine that the appropriation was from *Chicago Bus Stop*. Rather he opines that the taking was undeniably from the composition and recording of *Love Break*. (Dkt. No. 107-1, Stewart Op. ¶ 30) (The "taking from the composition and recording of *Love Break* is undeniable.")

Assuming this is a derivative work, the right to create and sell derivative works is an exclusive right reserved to the copyright owner. 17 U.S.C. § 101 (2010). On the other hand, "aspects of a derivative work added by the derivative author are that author's property." *Stewart v. Abend*, 495 U.S. 207, 223 (1990).

The issue of ownership for *Love Break* is outstanding, but it is undisputed that the Horn Hit from *Love Break* is different from the Horn Hit in *Chicago Bus Stop*. The Court must assess the qualitative and quantitative significance of the copied portion in relation to Plaintiff's work as a whole. Dr. Stewart concedes that Mr. Pettibone removed a baritone sax, when he created *Love Break*'s Horn Hits. (Dkt. No. 75-1, Stewart Op. at 23.) Dr. Stewart does not offer more information that would cause the Court to disregard

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

the differences between the Horn Hits in *Love Break* and *Chicago Bus Stop*.[12] Nor does he provide an analysis of the qualitative and quantitative importance of the Horn Hit to *Love Break*. Though the Horn Hits are admittedly different, Plaintiff asks the Court to infer the Horn Hit is quantitatively and qualitatively significant to *Love Break* because it is structurally important to 31% of *Chicago Bus Stop*. (Dkt. No.72 at 27.) The Court is not equipped to issue expert opinions on music. Drawing from Defendants' expert opinion, the Horn Hit does not feature as prominently in *Love Break* as it did in *Chicago Bus Stop*. In the original version of *Love Break*, the 0.23 second Horn Hit appears in the song for only sixteen total seconds out of an approximately seven-minute recording. (Dkt. No. 67-8, SOF ¶¶ 28, 31.) The Horn Hit is even less prominent in the instrumental version, where it only appears for 11.5 seconds total, and is not sounded for the first 3:11 minutes of the approximately seven minute recording. (Dkt. No. 67-8, SOF ¶¶ 29-30.) Plaintiff does not offer evidence that the Horn Hit in *Vogue* is quantitatively or qualitatively important to *Love Break*.

Plaintiff's expert concludes that the Horn Hit is quantitatively and qualitatively significant to *Vogue*. He opines "[i]n *Vogue* these horn parts are used to signal important structural moments in the composition and, other than the vocals, are the only prominent 'acoustic' sound in the recording," but the Horn Hit appears eleven times in *Vogue* as discussed *supra* in Section IV(a)(i)(1). (Dkt. No. 75-1, Stewart Op. at 7.) The Horn Hit, however, has been excluded from some popular cover songs of *Vogue*, diminishing its importance to the musical composition.[13]

Ultimately, the Court finds the alleged infringement does not meet the average audience or ordinary observer test. Copying "is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986). This standard was confirmed in *Newton*, where the Ninth Circuit held that the court "looks to the response

---

[12] Dr. Stewart only offers an analysis where he tracks an overlap in the "structure of horn [and] string tracks" from *Chicago Bus Stop* and *Love Break*. (Dkt. No. 75-1, Stewart Op. at 19.) He opines that the two works have the same horn and string structure for 1:48 of *Chicago Bus Stop* and 1:47 of *Love Break*. (Dkt. No. 75-1, Stewart Op. at 19.)

[13] For example, they did not appear in Robyn Rihanna Fentry's ("Rihanna") cover of the song. (Dkt. No. 67-1, Averill Op. at 10.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

of the average audience, or ordinary observer, to determine whether a use is infringing," or whether a use is *de minimis*. 388 F.3d at 1193. In *Newton*, the Court also cited to the Second Circuit, which held that under the "ordinary observer" test "[t]wo works are substantially similar where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'" *Id.* (internal quotation marks omitted); *see Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998). Mr. Pettibone's sampling, if any, is *de minimis.*

Having listened to the sound recordings of *Chicago Bus Stop*, *Love Break*, and *Vogue*, the Court finds that no reasonable audience would find the sampled portions qualitatively or quantitatively significant in relation to the infringing work, nor would they recognize the appropriation. The Court finds that any sampling of the Horn Hit was *de minimis* or trivial.

### C. Defense to Copying

Additionally, Defendants offer an affirmative defense to the claim of copyright infringement. Defendant offers evidence to demonstrate that the Horn Hit used in *Vogue* was independently created. There are disputed facts associated with this argument. However, the Court will briefly discuss the defense because it further bolsters the decision to grant Defendants' Motions.

Once plaintiff has established both originality and copying, it "becomes incumbent upon defendant to rebut that *prima facie* case." *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 985 (S.D.N.Y. 1980) ("[S]ubstantial similarity and access are the *sine qua non* to a finding of copying," and the two elements establish a *prima facie* case.) This can be done by demonstrating defendant's "independent creation of the accused article," or by showing that defendant copied a work in the public domain rather than plaintiff's product. *Id.* Plaintiff has not proven a *prima facie* case of copying, and Mr. Pettibone offers evidence of independent creation which further weighs in favor of granting Defendants' Motions. Mr. Pettibone testified that he used a "proteus emulator" to create the horns. (Dkt. No. 67-8, SOF ¶ 54.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|----------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## D. CONCLUSION

        For the foregoing reasons, the Court GRANTS Defendants' Motions for Summary Judgment.  Defendants are ORDERED to lodge a Proposed Judgment consistent with this ruling no later than November 25, 2013.


        **IT IS SO ORDERED.**

:

Initials of Preparer                    Rf